Rodney D. ROUSH, Plaintiff,

v.

Betty JUSTICE, et al., Defendants.

Civil Action No. 2:95–1012.

United States District Court,
S.D. West Virginia,
Charleston Division.

Dec. 23, 1996.

. Larry L. Skeen, Ripley, WV, for plaintiff.

Bryan R. Cokeley and Jan L. Fox, Steptoe & Johnson, Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' motion for summary judgment. For the reasons that follow, the Court **GRANTS** the motion.

Plaintiff Rodney D. Roush and Judith Annette Roush divorced by order of the Circuit Court of Kanawha County, West Virginia, on January 27, 1988. The Court awarded custody of the couple's child, Melissa, to Judith Roush and ordered Plaintiff to pay her child support and alimony. Plaintiff fell behind in his payments sometime thereafter, but quickly made up the arrearage. Plaintiff assumed custody of Melissa Roush in February 1991. On July 8, 1993, the Circuit Court of Kanawha County entered an order ("the Circuit Court order") ratifying an agreement executed by Plaintiff and Judith Roush that extinguished all claims for child and spousal support each allegedly owed the other.

In 1994, the Child Advocate Office ("CAO"), the state agency charged with enforcing child support obligations, W.Va.Code § 48A–2–1 (repealed 1995), automated its records onto a computer system known as OSCAR. The OSCAR system, developed and built by Network Systems, Inc. ("NSI"), was designed to apprise CAO staff of the status of support obligations and to instruct staff how to respond when responsible parents fall behind in their obligations. According to Defendants, over the course of building the OSCAR database, NSI neglected to input the Circuit Court order reflecting the

Roushes had settled their respective child and spousal support claims.

Because of this error, OSCAR showed Plaintiff owing back child support. Based on this information, Defendant Connie Dunlap, a CAO legal assistant,[1] on June 29, 1995, signed and issued to Plaintiff a notice, as authorized by W.Va.Code § 48A–5–3, that CAO would instruct his employer to withhold ten percent of his wages to satisfy his support obligations. On July 1, 1995 the name of the Child Advocate Office was changed to the Child Support Enforcement Division ("CSED"). *See* W.Va.Code § 48A–2–12. Upon receiving the notice of withholding, Plaintiff asked his attorney, Larry L. Skeen, to notify CSED of their error. By letter of July 11, 1995, Mr. Skeen informed CSED that Plaintiff in fact owed no child support, but did not mention or attach the Circuit Court order. Skeen "advised that unless the ... notice of withholding is immediately withdrawn a federal suit will be instituted immediately against your Department and against those employees personally involved seeking damages both compensatory and punitive for this outrage." Defs.' Mem.Supp. Summ.J. Ex. 1.

After receiving this letter, CSED responded by letter of July 27, 1995, informing Plaintiff that he owed no current child support, but did owe back support and interest on back support. Skeen disputed this by letter of August 2, 1995 and attached a copy of the check Plaintiff paid Judith Roush "in full settlement of all claims she might have against my client." Pl.'s Resp. Ex. 15. Again, Skeen failed to mention or attach the Circuit Court order. In the letter, Skeen advised CSED he would file a petition in the Circuit Court of Kanawha County to enjoin further collection efforts by the agency. Both of Skeen's letters were addressed to "Gentleman" rather than to a specific official,

and both were mailed to an address at which none of Defendants worked.

On August 31, 1995 Plaintiff's employer began withholding ten (10) percent of Plaintiff's wages as CSED had ordered. On September 29, 1995 CSED sent a second notice of wage withholding to Plaintiff's employer, instructing it to withhold fifty-five (55) percent of Plaintiff's wages. This second notice was unsigned. On October 4, 1995, before this increased withholding went into effect, Roush sought and obtained from the Circuit Court of Kanawha County an *ex parte* temporary restraining order enjoining the continued withholding of his wages.[2] Defendants to that action were served with the injunction on October 10, 1995. According to Defendants here, service of the temporary injunction on October 10, 1995 was the first notice they had of both Skeen's letters to the agency and of the erroneous withholding. After service of the injunction, Defendants immediately terminated the withholding and returned to Plaintiff the approximately three hundred dollars ($300.00) withheld from his wages since August 31, 1995.

Plaintiff brought this action under 42 U.S.C. § 1983. In addition to Wayne and Dunlap, Betty Justice and Karen Basham were named Defendants. Justice was appointed by the Honorable Elizabeth V. Hallanan, Judge of this Court, to implement a consent decree relating to the operations of CAO. *See Brinkley v. Hill,* No. 1:88–1502 (S.D.W.Va.1993). Basham is a supervisor of Defendant Wayne.

Our court of appeals has stated the standard used to determine whether a motion for summary judgment should be granted or denied as follows:

A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

**1.** Under normal CAO procedures, Defendant Robin Wayne, the legal assistant assigned to Plaintiff's case, would issue and sign the notice of withholding. On the day the notice of withholding went out, Dunlap happened to be responsible for Wayne's caseload. Defs.' Reply Ex. 1 at 6.

**2.** Named Defendants in that action were Gretchen O. Lewis, Secretary of the West Virginia Department of Health and Human Resources ("DHHR"), the agency which oversees CAO/CSED; Karen Basham; Connie Dunlap; and Rhone Poulenc AG Company, Plaintiff's employer whom CSED instructed to withhold Plaintiff's wages.

material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

A genuine issue exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2514. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.*

*Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* ⸺ U.S. ⸺, ⸺, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994).

It is not entirely clear from Plaintiff's complaint or his response to Defendant's motion for summary judgment the precise theories on which he proceeds. Plaintiff states, "If [Defendants'] actions were wilful and wanton, callously indifferent or were in deliberate disregard of [P]laintiff's rights, then . . . such conduct does provide a sufficient foothold for monetary recovery under § 1983." Pl.'s Resp. at 13; *see also* Compl. at ¶¶ 1, 4–14. Plaintiff does not specify which rights Defendants' actions violated. Since "[t]he first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed," *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) (citations omitted), the Court characterizes Plaintiff's claim as alleging that by improperly suggesting Plaintiff's wages to satisfy a non-existent support obligation, Defendants' conduct deprived him of property and liberty interests to be free from abusive government conduct, *see, e.g., Daniels v. Williams,* 474 U.S. 327, 332–33, 106 S.Ct. 662, 665–66, 88 L.Ed.2d 662 (1986); *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 720 (4th Cir.1991), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992), in violation of the rights secured by the Fourteenth Amendment Due Process Clause.

A Court's initial inquiry in a § 1983 action must focus on whether two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges and immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981); *Temkin,* 945 F.2d at 719. There is no question that Defendants, state employees vested with considerable authority, are state actors. *See id.* at 535–36. The Court will focus its analysis on the second element.

■ In a pair of 1986 companion cases, the Supreme Court held that allegations and proof of negligence are insufficient to constitute a deprivation of liberty or property under the Due Process Clause. *Daniels,* 474 U.S. 327, 106 S.Ct. 662; *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *see also Pink v. Lester,* 52 F.3d 73, 75 (4th Cir.1995) (stating "The language and the purpose of the Due Process Clause . . . restrict violations thereof to official conduct that entails some measure of deliberateness."). In *Daniels* the Court explained:

The Due Process Clause is simply not implicated by a *negligent* act of an official causing an unintended loss of or injury to life, liberty, or property. . . . Not only does the word "deprive" in the Due Process Clause connote more than a negligent act, but we should not open the federal courts to lawsuits where there has been no affirmative abuse of power.

474 U.S. at 328, 330, 106 S.Ct. at 662, 664. The Court left open the question of whether

other states of mind would suffice, and the circuits are split on the matter. Under the present facts, however, our inquiry need only apply the rule of *Davidson* and *Daniels,* since Plaintiff has shown no more than negligent conduct on the part of Defendants. In sworn depositions, each of the four Defendants stated they never received letters or phone calls from either Plaintiff or his attorney demanding that CSED correct the erroneous withholding. Defendants note that Skeen's letters were addressed to no one in particular at CSED, did not mention the Circuit Court order, and, in fact, were sent to the wrong address. They further aver they had no knowledge of the erroneous withholding prior to service of the Kanawha County Circuit Court's injunction order on October 10, 1995. Moreover, once Defendants learned of the wrongful withholding, they took immediate action to end it and to reimburse Plaintiff the wages wrongfully withheld. Despite abundant opportunity for discovery, Plaintiff has produced no evidence to refute Defendants' statements.

That said, Defendants' actions were far from laudable. They failed to enter the Circuit Court order onto the OSCAR system, failed to compare their files to the OSCAR computer records, and failed to respond adequately to Skeen's letters. Nonetheless, these computer glitches and bureaucratic shortcomings did not involve the "measure of deliberateness," *Pink,* 52 F.3d at 75, or "affirmative abuse of government power," *Daniels,* 474 U.S. at 330, 106 S.Ct. at 664, necessary to establish a deprivation of due process. *See also Pink,* 52 F.3d at 75 (citing *Daniels,* 474 U.S. 327, 106 S.Ct. 662) (stating "not all undesirable behavior by state actors is unconstitutional"). Summary judgment is proper here because Plaintiff has responded only with "mere allegations" that Defendants acted more than negligently, *see Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, not the specific facts contemplated by Rule 56.

■ Plaintiff asserts an alternate theory of liability: Defendants Basham and Justice, as supervisors of Wayne and Dunlap, the legal assistants who issued the notice of withholding, are liable for failure to adequately train and supervise their subordinates. But

for this inadequate training, Plaintiff contends, the inaccurate notice of withholding would not have issued. However, since "[a] claim of inadequate training under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised," *Temkin,* 945 F.2d at 724, and this Court has determined Wayne and Dunlap caused no Due Process Clause deprivation and thus violated no constitutional right of Plaintiff, Plaintiff's inadequate training and supervision claims are unpersuasive.

■ Plaintiff also attacks the state wage withholding statute, W.Va.Code § 48A–5–1 *et seq.,* on several grounds. First, Plaintiff states,

> [I]f for some unknown reason the defendants' actions are found by the court to have been proper and within the purview of the wage withholding law, then to the extent such legislation permits the initiation of the involuntary taking of a citizen's wages without first affording such citizen any right of hearing, as occurred here, such legislation is clearly unconstitutional and should be struck down.

Pl.'s Resp. at 13.

CSED derives its authority to initiate wage withholding from W.Va.Code § 48A–5–3(a):

> The withholding from an obligor's income of amounts payable as spousal or child support shall be enforced by the child support enforcement division in accordance with the provisions of section fifteen-a or fifteen-b, article two, chapter 48 of this code. Every support order ... entered by a circuit court or a magistrate of this state and every support order entered by a court of competent jurisdiction of another state shall be considered to provide for an order of income withholding ... notwithstanding the fact that such support order does not in fact provide for such an order of withholding.

Section 8 of the statute governs procedures before CSED:

> (a) In any case arising under the provisions of this article wherein a notice is served upon a person requiring him or her

to notify the child support enforcement division if the person is contesting action proposed to be taken against him:

(1) If the person so notified does not submit written reasons for contesting the action within the time set to contest the proposed action, and does not request a meeting with the child support enforcement division, then the child support enforcement division shall proceed with the proposed action; or

(2) If the person so notified does submit written reasons for contesting the action within the time set to contest the proposed action, and requests a meeting with the child support enforcement division, then the child support enforcement division shall schedule a meeting at the earliest practicable time with the person and attempt to resolve the matter informally.

(b) If the matter cannot be resolved informally, the child support enforcement division shall make a determination as to whether the proposed action is proper and should actually occur.

(c) The determination of the child support enforcement division shall be made within forty-five days from the date of the notice which first apprised the person of the proposed action. Upon making the determination, the child support enforcement division shall inform the parties as to whether or not the proposed action will occur, and, if it is to occur, of the date on which it is to begin, and in the case of withholding from income, shall furnish the obligor with the information contained in any notice given to an employer under the provisions of subsection (h), section three [§ 48A–5–3(h)] of this article with respect to such withholding.

W.Va.Code § 48A–5–8.

■ The statute clearly does not permit or condone Defendants' conduct. In ordering Plaintiff's wages withheld to satisfy a nonexistent support obligation, and in overlooking Skeen's letters, Defendants clearly violated the statute. However, as this Court has noted,

Simply alleging that the state has violated a statute does not, in and of itself, suffice to allege a federal constitutional deprivation. Section 1983 was intended to vindicate only federal rights determined under federal ... law, not claims arising under state law. *Weller v. Dept. of Social Services,* 901 F.2d 387 (4th Cir.1990) (violations of state law do not provide basis for due process claim).

*Roush v. Roush,* 767 F.Supp. 1344, 1354 (1991), *aff'd,* 952 F.2d 396 (4th Cir.1991), *cert. denied,* 504 U.S. 913, 112 S.Ct. 1948, 118 L.Ed.2d 552 (1992); *see also Hodge v. Jones,* 31 F.3d 157, 168 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 581, 130 L.Ed.2d 496. Just as negligent violation of the statute does not render Defendants liable for damages under § 1983, nor does it render the wage withholding statute constitutionally infirm.

Finally, Plaintiff alleges the following:

The forms presently being employed by the Defendant in noticing wage withholding do not provide for the signature of the party who initiates such proceedings and initiates the notice and it also contains a certificate of service which does not provide for a signature. This procedure does not meet the requirements of the West Virginia Rules of Civil Procedure or the Federal Rules of Civil Procedure and thus is not a sufficient notice nor is it a sufficient certificate of compliance.

Complaint at ¶ 17. As noted *supra,* no right to relief for violations of the state or federal rules exists and this Court is not predisposed to creating one.

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment and **ORDERS** the case dismissed and stricken from the docket of the Court.