**Warren Phillips PINK, Plaintiff–Appellant,**

v.

**L.T. LESTER; P.J. Gurney, Defendants–Appellees.**

No. 93–6227.

United States Court of Appeals, Fourth Circuit.

Argued March 10, 1995.

Decided April 19, 1995.

**ARGUED:** Ellen Ross Finn, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, DC, for appellant. Susan Campbell Alexander, Asst. Atty. Gen., Office of the Atty. Gen., Richmond, VA, for appellees. **ON BRIEF:** Steven H. Goldblatt, John J. Hoeffner, Supervising Attorney, Srinivas M. Raju, Student Counsel, and Astrid H. Wynter, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, DC, for appellant.

Before WILKINSON and NIEMEYER, Circuit Judges, and SPROUSE, Senior Circuit Judge.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge NIEMEYER and Senior Judge SPROUSE joined.

## OPINION

WILKINSON, Circuit Judge:

This case presents the question whether prisoners have a cause of action under 42 U.S.C. § 1983 for negligent interference by prison officials with their right of access to the courts. We hold that under *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), they do not. Accordingly, we affirm the judgment of the district court.

### I.

Appellant Warren Phillips Pink was convicted in state court for cocaine distribution and sentenced to twenty-six years imprisonment. He was subsequently incarcerated at the Powhatan Reception and Classification Center ("PRCC") in State Farm, Virginia. Meanwhile, the United States instituted forfeiture proceedings against certain property of Pink's that was allegedly used in connection with drug trafficking. On August 2, 1991, the district court entered an order of forfeiture against the property. Pink, from prison, filed a timely notice of appeal in this court.

On August 16, 1991, the Clerk of Court wrote Pink that he was required to pay the $105 docketing fee or, alternatively, move to proceed *in forma pauperis* within ten days. If he failed to do so, the appeal would be dismissed for want of prosecution. By August 29, 1991, Pink had not yet remitted the fee or motioned for waiver. The Clerk again wrote Pink, notifying him that an order of dismissal would issue if the fee was not paid on or before September 13, 1991.

On September 7, 1991, Pink completed a request form for a money order in the amount of $105.00; his inmate account at the time contained sufficient funds to cover the request. He noted on the form that the money order should be paid to the Clerk of the U.S. District Court in Alexandria, Virginia, before September 13, 1991. Pink gave the completed form to a prison guard, who then delivered it to the proper officials.

The request form was signed and approved by PRCC Assistant Warden Patrick J. Gurney. At this point, the form should have been delivered to the Accounting Department for processing. Warden Gurney testified that his practice was to place approved requests in his out-box for such delivery, but that he had no independent recollection of Pink's request. For reasons unknown, Accounting did not receive the form. As a result, the money order that Pink requested was never issued or mailed to the district court. On September 16, 1991, this court dismissed Pink's appeal from the forfeiture order. The record does not indicate that Pink made any attempt to reinstate the appeal or rectify the default.

Thereafter, Pink filed suit against Gurney and PRCC Assistant Warden Layton T. Lester, who at the time of Pink's request served as Assistant Warden of Programs at Powhatan Correctional Center. Pink claimed that the defendants' "carelessness" deprived him of his constitutional right of access to the courts. Defendants moved for summary judgment. The district court granted the motion on the ground that Pink's complaint "at best makes out a cause of action for negligence," and relied on *Daniels v. Williams, supra,* for the proposition that the claim therefore was not actionable under § 1983. Pink now appeals.

### II.

It is well-settled that 42 U.S.C. § 1983, which provides a cause of action for the deprivation of federal constitutional and statutory rights under color of state law, contains no independent state-of-mind requirement. *See Parratt v. Taylor,* 451 U.S. 527, 534–35, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). Rather, the requisite intent in a given case turns upon the standard necessary to establish a violation of the underlying constitutional or statutory right.

*Daniels,* 474 U.S. at 330, 106 S.Ct. at 664. In *Daniels v. Williams,* the Supreme Court held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328, 106 S.Ct. at 663. We think that *Daniels* precludes appellant's claim that the prison officials in this case negligently denied him access to the courts.

### A.

■ The basic rationale for the *Daniels* decision is a powerful one. The term "deprive," as employed in the Fourteenth Amendment, suggests more than a mere failure to take reasonable care: it connotes an intentional or deliberate denial of life, liberty, or property. *See Daniels,* 474 U.S. at 330, 106 S.Ct. at 664 (quoting *Parratt,* 451 U.S. at 548–49, 101 S.Ct. at 1919–20 (Powell, J., concurring)). Thus, "[t]he most reasonable interpretation of the Fourteenth Amendment would limit due process claims to such active deprivations." *Parratt,* 451 U.S. at 548, 101 S.Ct. at 1919 (Powell, J., concurring).

In fact, to allow claims based on theories of negligence would "trivialize the centuries-old principle of due process of law." *Daniels,* 474 U.S. at 332, 106 S.Ct. at 665. The Supreme Court founded this conclusion on the fact that negligent acts by state officials involve no affirmative abuse of governmental power—which is, after all, what the Due Process Clause was meant to prevent. *Id.* at 331–32, 106 S.Ct. at 664–66. Leaving a pillow on prison stairs (as in *Daniels*), or losing an inmate's hobby kit (as in *Parratt*), are actions "quite remote" from the concerns of the Fourteenth Amendment. *Id.* at 332, 106 S.Ct. at 665. Thus, as Justice Powell deduced in *Parratt,* and *Daniels* reiterated, "[i]t would make no sense to open the federal courts to lawsuits where there has been no affirmative abuse of power." *Parratt,* 451 U.S. at 549, 101 S.Ct. at 1920 (Powell, J., concurring).

*Daniels'* rejection of a theory of actionable negligence under the Due Process Clause is consistent with Supreme Court cases interpreting other provisions of the Constitution. For instance, *Estelle v. Gamble* held that only conduct rising to the level of "deliberate indifference" constitutes "infliction" of cruel and unusual punishment for purposes of the Eighth Amendment. 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Similarly, *Arlington Heights v. Metropolitan Housing Dev. Corp.* requires discriminatory purpose in order to establish a "denial" of Equal Protection. 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

The language and the purpose of the Due Process Clause thus restrict violations thereof to official conduct that entails some measure of deliberateness. Absent such limitation, the Fourteenth Amendment would be demeaned, and federal courts would adjudicate claims that lacked connection to federal law. In our system of governance, the Constitution is revered but not ubiquitous, and federal courts sit as courts of limited jurisdiction. Thus, as *Daniels* underscores, not all undesirable behavior by state actors is unconstitutional. *See Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (the Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States").

### B.

This elementary lesson—that negligent deprivations of life, liberty, or property are not actionable under 42 U.S.C. § 1983—is applicable here. In this case, appellant complains of the misfiling of a standard prisoner request for a money order. Prisoners, of course, frequently use money orders to purchase goods by mail, pay debts, and the like. *See e.g., Parratt,* 451 U.S. at 530, 101 S.Ct. at 1910. Once such requests have been submitted, they must be forwarded to the proper officials for approval (if required) and then to those persons who deal with inmate accounts. They must also be mailed out to the intended recipient. All of this business is ministerial in nature. And it should be plain that the possibilities for inadvertent, but negligent, mistakes in this area are legion.

*Daniels* warns of the hazards of creating a federal cause of action in damages for such ministerial mistakes. Like the official ac-

tions at issue in *Daniels* and *Parratt*, we think that the unintended misrouting of a routine money order request is too far afield from state action " 'used for purposes of oppression' " to constitute a violation of the Due Process Clause. *Daniels*, 474 U.S. at 331, 106 S.Ct. at 665 (citation omitted). For if it did, the meaning of the Fourteenth Amendment would surely be trivialized, and federal courts would be open to cases where no real abuse of public power exists. In sum, *Daniels* compels the conclusion that appellant possesses no cause of action for simple instances of carelessness.

### III.

Appellant, however, maintains that *Daniels v. Williams* does not control this case. He urges that *Daniels* governs only alleged violations of the Due Process Clause, whereas the right at issue here—the right of access to the courts—derives from the First Amendment right to petition the government for redress of grievances. We think it matters not, for purposes of § 1983, whether the right of access is catalogued under the First or Fourteenth Amendment. In either case, fidelity to *Daniels* and its stated rationale requires dismissal of appellant's claim.

To begin with, appellant's reliance on the First Amendment as the exclusive source of the right of access to the courts is itself questionable. As the Supreme Court has explained, "[t]he right of access to the courts ... is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974); *see also Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Other cases, it is true, have suggested that the right is located in the First Amendment. *See Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 3198–99, 82 L.Ed.2d 393 (1984); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972). Some of those statements were made in cases involving areas of the law far removed from § 1983, *e.g.*, *Cali-*

*fornia Transport*, 404 U.S. at 510, 92 S.Ct. at 611–12 (antitrust suit under Sherman Act), whereas *Bounds* and *Wolff* dealt directly with § 1983 right of access challenges by prisoners. *See John L. v. Adams*, 969 F.2d 228, 231 (6th Cir.1992) (canvassing Supreme Court cases and stating that "the Court has identified the source of the right of access *in the prisoner context* as the Due Process Clause") (emphasis added). And indeed, the very point of the right of *access* to the courts is that it provides judicial *process*. Access for access' sake is an empty concept; it is the accompanying due process of law that lends meaning to the right. *See Boddie v. Connecticut*, 401 U.S. 371, 374–79, 91 S.Ct. 780, 784–87, 28 L.Ed.2d 113 (1971).

In any event, the question before us is not ultimately one of nomenclature. However appellant's claim is labeled, the rationale of *Daniels* controls. Negligent official conduct does not instantly become actionable under § 1983 because it is termed an infringement of the right to petition rather than a violation of due process. Just as the claim asserted in *Daniels* lacked relation to the purposes of the Fourteenth Amendment, so too the claim here has little to do with the broad guarantees of the First Amendment. The inadvertent misrouting of a request form simply does not implicate the fundamental democratic principle of the right to petition; namely, that a republican government not turn a deaf ear to its citizenry. *See McDonald v. Smith*, 472 U.S. 479, 482–83, 105 S.Ct. 2787, 2789–90, 86 L.Ed.2d 384 (1985); *United States v. Cruikshank*, 92 U.S. 542, 552, 23 L.Ed. 588 (1876).

What is more, the argument with respect to the Fourteenth Amendment term "deprive" can also be made with respect to the word "abridge," the operative language in the First Amendment. Just as a "deprivation" suggests an intentional denial, *see Parratt*, 451 U.S. at 548, 101 S.Ct. at 1919 (Powell, J., concurring), an "abridgement" connotes a conscious act that cuts something off from something else, or eliminates a "bridge." Notably, the words deprive and abridge originally shared the same meaning, *see* Webster's Ninth New Collegiate Dictionary 46 (1984) ("abridge ... 1a *archaic:* DE-

PRIVE"), and thus should both be read to imply the same degree of intent.

We think it important also that both *Daniels* and this case arose in the prison context. Absent a contrary instruction from Congress, we are reluctant to increase the already steady stream of litigation produced in that setting by sanctioning negligence suits that serve no constitutional ends. *See Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) ("Federal courts sit not to supervise prisons but to enforce ... constitutional rights...."). The expansion of § 1983 to instances of mere negligence foreshadows further federal interference with the operations of state penal institutions. The significant costs that would be imposed by such suits, without the benefit of remedying federal wrongs, are unjustifiable. *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) ("[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.").

### IV.

Our conclusion that *Daniels* removes negligent denials of access from the reach of § 1983 accords with the decisions of two fellow circuits. In *Hines v. Boothe*, 841 F.2d 623 (5th Cir.1988), an inmate alleged a deprivation of the right of access because his appellate brief, sent to him by counsel, was negligently misplaced in the prison mailroom. The Fifth Circuit summarily dismissed the claim, holding that "[n]egligence does not state a claim under section 1983," and cited *Daniels* for support. *Id.* at 624.

More recently, the Seventh Circuit held that a clerk of court's failure to file a prisoner's complaint was not a violation of the prisoner's right of access. *See Kincaid v. Vail*, 969 F.2d 594, 601–03 (7th Cir.1992),

cert. denied, —— U.S. ——, 113 S.Ct. 1002, 122 L.Ed.2d 152 (1993). The Court found that the prisoner had not shown that the clerk "deliberately" failed to file the complaint and held that "a mere isolated incident of negligence ... does not rise to the level of a constitutional violation actionable under § 1983." *Id.* at 602. This holding was likewise based, in part, on *Daniels*.

Furthermore, to our knowledge, no circuit has held since *Daniels* that negligent denials of the right of access may serve as the basis for liability under § 1983. *Cf. Crawford–El v. Britton*, 951 F.2d 1314, 1319 (D.C.Cir.1991) (casting "doubt" on whether negligent misdelivery of prisoner's belongings, including legal documents, "could violate the [right of access] unless done with an intent to interfere with litigation," and citing *Daniels* ), cert. denied, —— U.S. ——, 113 S.Ct. 62, 121 L.Ed.2d 29 (1992).

### V.

Finally, our decision in *McCray v. Maryland*, 456 F.2d 1 (4th Cir.1972), does not save appellant's claim. *McCray* held that a prisoner who alleged that a state court clerk negligently deprived him of the right of access had stated a cause of action under § 1983. In so holding, *McCray* stressed that the right of access to the courts underlies the ability to assert other rights of constitutional magnitude. *Id.* at 6.

*McCray* was correct to emphasize the right of access to the courts, whose importance is such that we would not countenance any attempt on the part of prison officials to obstruct it. However, it was not the place of the right in any putative hierarchy but the nature of official conduct that *Daniels* found dispositive. To the extent that *McCray* authorizes a cause of action for merely negligent conduct that impacts access to the courts, it is inconsistent with the Supreme Court's subsequent decision in *Daniels.**

---

* *Ruefly v. Landon*, 825 F.2d 792 (4th Cir.1987), comports with our holding today and with *Daniels*. In that case, the court held that the district court erred in dismissing plaintiff's claim in reliance on *Daniels* because the claim alleged an Eighth Amendment violation. Such claims are not analyzed under *Daniels*, the court noted, but

under the "deliberate indifference" standard provided in Eighth Amendment cases like *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), and *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The court then applied the correct standard, which far ex-

## VI.

The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct that results in a denial of access to the courts. Its judgment is hereby

*AFFIRMED.*

ceeds negligence, and found the complaint lacking.

In addition, appellant's claim is not rescued by his attempt to characterize the official conduct as gross negligence. Appellant failed to raise any such claim below. Moreover, the district court was correct to read the complaint to state a claim for simple negligence, as it alleges only "carelessness" on the part of the defendants and nothing more.