**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RODNEY D. ROUSH,
<u>Plaintiff-Appellant,</u>

v.

KAREN BASHAM, Regional Manager;
BETTY JUSTICE; CONNIE DUNLAP, an
employee of the Child Advocate
Office; ROBIN WAYNE,
<u>Defendants-Appellees,</u>

and

No. 97-2504

GRETCHEN O. LEWIS, Secretary of
the Department of Health and
Human Resources; DEPARTMENT OF
HEALTH AND HUMAN
RESOURCES OF THE STATE OF WEST
VIRGINIA; KANAWHA COUNTY CHILD
ADVOCATE OFFICE, a division of the
State of West Virginia,
<u>Defendants.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-95-1012-2)

Argued: May 5, 1998

Decided: June 18, 1998

Before NIEMEYER and WILLIAMS, Circuit Judges, and
HOWARD, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Larry Lynn Skeen, SKEEN & SKEEN, Ripley, West Virginia, for Appellant. Kelly Renee Reed, STEPTOE & JOHNSON, Charleston, West Virginia, for Appellees. **ON BRIEF:** Jan L. Fox, STEPTOE & JOHNSON, Charleston, West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

On November 14, 1995, Rodney D. Roush filed suit pursuant to 42 U.S.C.A. §§ 1981 (West 1994) and 1983 (West Supp. 1998) against Gretchen O. Lewis, Secretary of the Department of Health and Human Resources of the State of West Virginia; Karen Basham, Regional Manager of the Kanawha County Child Advocate Office; and Connie Dunlap, an employee of the Child Advocate Office.[1] On May 30, 1996, Roush filed an amended complaint adding defendants Betty Justice and Robin Wayne and dismissing Gretchen Lewis. Roush's amended complaint alleged that the defendants unconstitutionally deprived him of his property without due process of law by improperly garnishing his wages.[2] Roush appeals from the district

_____

[1] The Child Advocate Office was later renamed the Child Support Enforcement Division. For convenience, we refer to the agency as the Child Advocate Office throughout the opinion.

[2] Roush also alleged that W. Va. Code §§ 48A-5-1 to -9 (1996 & Supp. 1997) is unconstitutional to the extent that it allows the garnishment of a West Virginia resident's wages, without the right to a hearing, for a nonexistent debt or obligation, and alleged that Robin Wayne and Connie Dunlap were inadequately trained and supervised by Karen Basham and Betty Justice.

2

court's revised memorandum opinion and order granting summary judgment for the defendants. Finding no error, we affirm.

We review a district court's grant of summary judgment de novo. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In considering whether summary judgment is proper, all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Viewed in the light most favorable to Roush, the facts are as follows: Roush and his wife, Judith Annette Roush, were divorced by Order of the Circuit Court of Kanawha County, West Virginia, on January 27, 1988. Pursuant to that Order, Judith Roush was granted custody of their minor child, and Roush was ordered to pay child support and alimony. Roush fell into arrears on the payments, and the Child Advocate Office garnished his wages. On February 9, 1991, however, the custody of the minor child was transferred to Roush, and Judith Roush was ordered to pay child support to Roush. Although Roush was still in arrears on his support obligations, Roush and his ex-wife signed a Complete Release and Settlement Agreement -- entered as an Order of the Circuit Court of Kanawha County on July 8, 1993 -- settling all issues between them, including all money owed from one to the other, including spousal and child support. Consequently, the Child Advocate Office notified Roush's employer on July 15, 1993, to cease withholding Roush's wages.

In 1994, the case records of the entire Child Advocate Office were completely automated. The new computer system was intended to direct the appropriate personnel about the proper handling of each support case. The information on Roush, and apparently many others,[3]

_____

[3] Roush is not alone in his experience with the Child Advocate Office's ineptitude. Litigation arising from shortcomings in the operation of child

was not entered into the system correctly, however. The computerized records failed to reflect the settlement agreement of July 8, 1993, and indicated that Roush was still in arrears in his support obligations.

On June 29, 1995, the Child Advocate Office sent Roush's employer a letter stating that Roush owed an arrearage of $12,183.29 and directing it to withhold Roush's wages in the amount of ten percent per pay period. Roush's employer provided him with a copy of the notice and on June 30, 1995 began withholding ten percent of his wages, in compliance with the directives of the Child Advocate Office. Roush contacted his attorney, who wrote a letter to the Child Advocate Office on July 11, 1995, advising that Roush did not owe any child support. The Child Advocate Office sent a second notice on July 27, 1995, to both Roush and his employer stating that Roush was not currently obligated to pay support but did owe back support and/or interest. In response to the July 27 notice, Roush's counsel wrote to the Child Advocate Office again on August 2, 1995, reiterating that Roush did not owe any back support or interest. Roush's counsel enclosed a copy of Roush's check to Judith Roush in full settlement of all claims she might have against him. Roush's counsel never received a reply from the Child Advocate Office to his letters.[4]

_____

support enforcement in West Virginia led to the entry of an initial federal court order on February 28, 1990, by United States District Judge Elizabeth Hallanan, imposing procedural requirements and minimum staffing levels on certain regions of the Child Advocate Office, including Kanawha County. See Brinkley v. Hill, 981 F. Supp. 423, 430 (S.D. W. Va. 1997) (reviewing procedural history of ongoing litigation involving the Child Advocate Office). Betty Justice was appointed to oversee the implementation of the federal court order in the Kanawha County Child Advocate Office. The failure of the various regions of the Child Advocate Office to comply with the district court's order, however, resulted in at least eight subsequent orders by the district court. See id. at 430-37 (noting the district court's nine-year role in micro-managing the West Virginia Child Advocate Office). Judge Hallanan noted that West Virginia was one of only seven localities to receive a grade of "F" with respect to its child support enforcement from the Subcommittee on Public Assistance and Unemployment Compensation, of the House Committee on Ways and Means. See id. at 436.

[4] Appellees argue that Roush's counsel failed to address his letters to Ms. Dunlap or to the office where she was located. Both the June 29,

Another notice of withholding from the Child Advocate Office, dated September 29, 1995, directed that fifty-five percent of Roush's net pay be withheld to apply toward an arrearage of $12,418.28.**5**

The fifty-five percent withholding never went into effect because Roush's counsel quickly obtained a temporary restraining order on October 4, 1995, from the Circuit Court of Kanawha County restraining the Appellees from further withholding Roush's wages. Karen Basham was personally served with the injunction on October 10, 1995. She immediately terminated Roush's wage withholding. The Circuit Court subsequently entered an order on December 4, 1995, permanently enjoining Appellees from withholding from Roush's wages any amounts for child support or alimony arising from his marriage to Judith Roush and directing Appellees to return any funds they had received from the improper withholding. Approximately $300.00 had been improperly withheld from Roush's wages in accordance with the instructions from the Child Advocate Office. The withheld wages were returned to Roush.

Roush filed suit in the Southern District of West Virginia on November 14, 1995, pursuant to 42 U.S.C.A. SS 1981 (West 1994) and 1983 (West Supp. 1998). On November 4, 1996, Appellees moved for summary judgment. In ruling on Appellees' motion for summary judgment, the district court noted that Appellees' "actions were far from laudable." Roush v. Justice, C.A. No. 2:95-1012, at 8 (S.D. W. Va. July 14, 1997). We agree. Appellees were undoubtedly negligent and, moreover, violated West Virginia law in ordering Roush's wages withheld to satisfy a nonexistent support obligation. An injury to life, liberty or property caused by the mere negligence of state officials is insufficient to constitute a deprivation of due process pursuant to the Due Process Clause of the Fourteenth Amend-

_____

1995, notice and the September 29, 1995, notice of withholding, however, directed that all information regarding the obligor should be sent to P.O. Box 3227, Charleston, West Virginia 25332-3227. The notices did not mention the new address on Capitol Street to which the Child Advocate Office had moved.

**5** It is unclear whether the September 29 notice was ever sent to Roush or his employer.

5

ment. See Daniels v. Williams, 474 U.S. 327, 335-36 (1986); Pink v. Lester, 52 F.3d 73, 77 (4th Cir. 1995). Accordingly, the district court properly granted summary judgment for Appellees. The district court also held that Roush's claim against Basham and Justice for the "inadequate training and supervision" of Dunlap and Wayne must fail because "[a] claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991). Thus, the district court properly granted summary judgment for Appellees Basham and Justice. Finally, the district court properly rejected Roush's claim that West Virginia Code § 48A-5-1, et seq. is unconstitutional.

We have reviewed the record, briefs, and pertinent case law in this matter, and we have had the benefit of oral argument. Our careful review persuades us that the rulings of the district court were correct. Accordingly, we affirm on the reasoning set forth in the district court's thorough opinion. See Roush v. Justice , C.A. No. 2:95-1012 (S.D. W. Va. July 14, 1997).

AFFIRMED

6