UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TRAY CARTER,
　　　　　　*Plaintiff-Appellant,*

　　　　　　v.

BALTIMORE COUNTY, MARYLAND;
BRIAN F. KIRK; OFFICER MOHR,
Baltimore County Police Officer
(Badge 4065); K. L. SMITH,
Baltimore County Police Officer
(Badge 4159),
　　　　　　*Defendants-Appellees,*

　　　　　　and

MAYOR AND CITY COUNCIL OF
BALTIMORE; JOHN W. ANDERSON,
Sheriff of Baltimore City; STATE OF
MARYLAND; OFFICER HENDERSON,
Searching Officer and "Requester"
at Baltimore City Detention Center;
L. SMITH, Arresting Officer on
4/7/99, Baltimore City Police
Department; BALTIMORE COUNTY
POLICE OFFICER 3851 (ARRESTING
OFFICER ON 5/27/99); TEN UNNAMED
DETENTION CENTER OFFICERS,
BALTIMORE COUNTY DETENTION
CENTER,
　　　　　　*Defendants.*

No. 03-1562

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Harvey II, Senior District Judge.
(CA-01-1024-H)

Argued: January 20, 2004

Decided: March 31, 2004

Before WILKINS, Chief Judge, and LUTTIG and
TRAXLER, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by unpublished per
curiam opinion.

---

**COUNSEL**

**ARGUED:** Francis Joseph Collins, KAHN, SMITH & COLLINS,
P.A., Baltimore, Maryland, for Appellant. Paul M. Mayhew, Assistant
County Attorney, COUNTY ATTORNEY'S OFFICE FOR THE
COUNTY OF BALTIMORE, Towson, Maryland, for Appellees. **ON
BRIEF:** Edward J. Gilliss, County Attorney, COUNTY ATTOR-
NEY'S OFFICE FOR THE COUNTY OF BALTIMORE, Towson,
Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Appellant Tray Carter brought this action against Baltimore
County, Maryland, and Baltimore County police officers Kenneth L.
Smith, Jr., Kerry Mohr, and Brian F. Kirk, alleging claims under 42
U.S.C.A. § 1983 (West 2003), for violations of his federal constitu-
tional rights under the Fourth and Fourteenth Amendments to the
United States Constitution and the analogous provisions of the Mary-

land Constitution. Carter also asserts state-law claims for false arrest and malicious prosecution. The district court granted summary judgment to the defendants as to the section 1983 claims and dismissed the state-law claims without prejudice. For the following reasons, we affirm in part, reverse in part, and remand.

I.

The underlying facts, viewed in the light most favorable to the appellant, *see Goldstein v. The Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 341 (4th Cir. 2000), are as follows.

On June 16, 1998, Officer Kenneth L. Smith, Jr., of the Baltimore County Police Department, arrested Reginald Carter ("Reginald") for shoplifting at a Value City department store. Reginald, who had no personal identification with him at the time, falsely claimed to be his brother Tray Carter ("Tray"). To support his claimed identity, Reginald gave the officer Tray's date of birth and social security number, as well as information concerning Tray's past criminal record for sexual assault. A search of existing police agency records, including criminal history records, confirmed that the information provided by the suspect matched information on file for "Tray Carter," as did the suspect's physical characteristics (age, skin color, hair, eyes, height and weight). The suspect was booked as "Tray Carter," assigned Baltimore County Identification ("BCI") number 232090 and detention center identifier 982823, both in the name of "Tray Carter," and released.

Three days later, on June 19, 1998, Officer Kerry Mohr of the Baltimore County Police Department also arrested Reginald for shoplifting, this time at a Marshalls store. Reginald again claimed to be his brother Tray and provided detailed identification information that satisfied Mohr and her supervisor of his purported identity. Consequently, Reginald was again booked as "Tray Carter" under Tray's assigned BCI and detention center identifier. This time, however, Tray learned of Reginald's deception when he contacted the Baltimore County Detention Center to check on his brother. Tray was told that there was no "Reginald Carter" in custody, only a "Tray Carter." Tray then obtained Officer Mohr's name and telephone number, contacted Officer Mohr, and explained the situation. Officer Mohr, in

turn, performed a fingerprint comparison and verified that Reginald had indeed given her the wrong name.

On June 28, 1998, Officer Mohr re-charged the June 19, 1998, shoplifting offense against "Reginald Carter," along with the additional offenses of giving false statements to a police officer and a state official. She also notified the state's attorney's office, commissioner's office, the central records section of the Baltimore County police department, and the Baltimore County detention center of the misidentification, in order that their records of the arrest could also be corrected. However, because neither Tray nor Officer Mohr knew of Reginald's earlier arrest on June 16, 1998, or Reginald's similar deception on that date, the charges filed by Officer Smith against "Tray Carter" remained pending.

While Reginald was in custody, Officer Mohr became aware that Reginald had an outstanding arrest warrant in Baltimore City on unrelated charges. She contacted the Baltimore City Sheriff's Office, who issued a detainer to the Baltimore County Detention Center for this charge. On September 2, 1998, the June 16 charges issued in the name of "Tray Carter" pursuant to Officer Smith's arrest were scheduled for a hearing. Reginald, who was in custody at the time, failed to appear as "Tray Carter" at the hearing and Tray had no knowledge of the proceeding. Thus, the presiding judge of the Maryland court issued a bench warrant for the arrest of "Tray Carter."

On May 27, 1999, while on routine patrol, Officer Brian F. Kirk initiated a traffic stop of a vehicle being driven by John Spratley for a non-functioning license plate light. When Officer Kirk checked Spratley's driver's license, he discovered that the license was suspended and he placed Spratley under arrest. At the time of the stop, Tray was a passenger in the back seat, along with his girlfriend and their daughter. A second woman was seated in the front passenger seat next to Spratley.

According to Tray, during the traffic stop Officer Kirk instructed him to get out of the vehicle and put his hands on the roof, and Kirk then conducted a pat-down of Tray's outer clothing for weapons. Tray testified that during this pat-down, Officer Kirk reached into his pants

pocket and removed his driver's license, which was loose inside the pocket, without his consent.

After ascertaining Tray's identity, Officer Kirk checked the name for outstanding charges and learned of the bench warrant for "Tray Carter" issued on September 2, 1998. Officer Kirk then placed Tray under arrest pursuant to the bench warrant. Tray does not dispute that there was an outstanding warrant for his arrest at the time. However, he complains that Officer Kirk arrested and detained him despite his repeated assertions that the warrant should have been for his brother and that Officer Kirk refused to look at a copy of a court order pertaining to a misidentification of Tray by a Baltimore City police officer that had occurred on April 7, 1999. On that date, while walking down the street in the City of Baltimore, Tray had been arrested by a Baltimore City police officer on an outstanding warrant for Reginald Carter. At Tray's insistence, Baltimore City Circuit Court Judge Nance ultimately ordered a fingerprint comparison which confirmed the mistake, and Tray was released from custody on May 12, 1999.[1]

After arresting Tray on the outstanding bench warrant issued in his name, Officer Kirk transported Tray to the Baltimore County Detention Center. Prior to his arrival there, the police precinct had identified the incoming defendant as having the existing detention center identifier 982823 and the corresponding file had been pulled in anticipation. The file was under the name "Reginald Carter." When the paperwork and "hard card" were received for Tray Carter, however, an employee of the Detention Center noticed that it did not match the name contained in the file that had been pulled in anticipation of his arrival. She then compared the photograph on file (which had been taken of Reginald posing as Tray in June), to the photograph taken of Tray the previous day, and recognized that they also did not match. To correct the discrepancy, the employee issued "Tray Carter" detention center identifier 992139 (with an alias of "Reginald Carter") and notified her superiors of the discrepancy. On June 2, 1999, Tray was

---

[1]The parties appear to agree that Tray was arrested by the Baltimore City police officer on the warrant for Reginald because "Tray Carter" was listed as a known alias of Reginald Carter. As noted below, Tray ultimately sued various Baltimore City defendants for injuries arising from this incarceration, but settled those claims prior to this appeal.

released from custody when officials discovered that Reginald had falsely claimed to be Tray when Officer Smith arrested him on June 13, 1998, and that it was this deception that had led to the mistaken issuance of the warrant in the name of "Tray Carter."

On March 7, 2001, Tray filed this action in the Circuit Court for Baltimore City, Maryland, against the State of Maryland, the Mayor, City Council, and Sheriff of Baltimore City, Baltimore County, and various named and unnamed individual city and county police officers, alleging federal constitutional and state law claims arising out of his arrest and detention by the Baltimore City officers in April 1999, and by the Baltimore County officers in May 1999. The action was removed to the district court, which granted summary judgment to the defendants on the federal claims and dismissed the state-law claims without prejudice. Concluding that the district court had acted prematurely, we vacated the grant of summary judgment and remanded for further proceedings. *See Carter v. Baltimore County, Md.*, 39 Fed. Appx. 930, 2002 WL 1580679 (4th Cir. 2002) (unpublished disposition). In the interim, Tray settled his claims against the State of Maryland and the Baltimore City defendants.

On August 22, 2002, after our remand, Tray filed an amended complaint solely against Officer Smith, Officer Mohr, Officer Kirk, and Baltimore County. In Count I, Tray asserted a claim under 42 U.S.C.A. § 1983, for violation of his rights under the Fourth and Fourteenth Amendments. In Counts II-V, Tray asserted various state law claims against the defendants. Concluding that the county's liability was wholly derivative of the liability of the individual police officers, the district court granted the county's motion to bifurcate and to stay discovery as to it. At the close of discovery, all defendants filed for summary judgment. The district court granted the motion as to Count I and dismissed Counts II-V without prejudice.

## II.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983. In order to prevail on a § 1983 claim, Tray must show that the officers deprived him of a statutory or constitutional right that was "clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotation marks omitted).

Tray asserts two distinct claims under section 1983. First, he claims that his due process rights under the Fourteenth Amendment were violated by Officers Smith, Mohr, and Kirk because he was errone-ously arrested and detained on two occasions as a result of their inves-tigative failures. Second, he claims that Officer Kirk violated his Fourth Amendment right to be free from unreasonable searches and seizures when he ordered him out of the vehicle, frisked him, and removed his license from his pocket on May 27, 1999. We address each claim in turn.

### A.

We begin with Tray's claim that the officers deprived him of his liberty without due process of law in violation of the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment provides that states may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. "[A] *negligent* act of an official causing unintended loss of or injury to life, liberty, or property," however, does not implicate the due process clause. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). Rather, "[t]he term 'deprive,' as employed in the Fourteenth Amendment, suggests more than a mere failure to take reasonable care: it connotes an intentional or deliberate denial of life, liberty, or property." *Pink*, 52 F.3d at 75. Tray claims that he has demonstrated at a minimum that Officers Smith and Mohr were deliberately indifferent to his rights when they accepted Reginald's representations as to his identity, that Officer Mohr was again deliberately indifferent to his rights when she failed to discover Reginald's prior misrepresentation to Officer Smith, and that Officer Kirk was deliberately indifferent to his rights when he failed to investigate whether Tray was, in fact, the person for whom the bench warrant should have been issued. For the following reasons, we reject each claim.

We begin with Tray's claims against Officer Smith. Specifically, Tray asserts that Officer Smith violated his due process rights because Officer Smith's failure to properly identify Reginald Carter at the time of his arrest on June 16, 1998, ultimately led to the issuance of the bench warrant and Tray's detention in May 1999. We disagree.

When Officer Smith arrested the shoplifting suspect on June 16, Reginald did not merely identify himself as "Tray Carter," but also provided personal information which was quickly verified in existing police records as indeed matching that of Tray Carter. Police records likewise confirmed that the physical characteristics of the suspect matched those on file for Tray Carter. Thus, Tray's claim can be distilled to a complaint that Officer Smith did not conduct further investigation, including a fingerprint check, to confirm that the shoplifting suspect was indeed the "Tray Carter" that he claimed to be. We have little trouble concluding that Officer Smith's actions do not rise to the level of an intentional or deliberate denial of Tray's liberty. Even if it could be said that the complained-of failure to perform a fingerprint analysis in the face of such confirmed personal information was a negligent omission under ordinary standards of police investigative procedures, such an omission cannot support the claimed due process violation. Accordingly, we affirm the district court's grant of summary judgment to Officer Smith.

We likewise reject Tray's claim that Officer Mohr's alleged actions and inactions rose to the level of an intentional or deliberate denial of Tray's liberty interest. Like Officer Smith, Officer Mohr was deceived by Reginald's ability to recite personal identification information of his brother. Furthermore, Officer Mohr, immediately upon being made aware of Tray's claim that Reginald had impersonated him during the June 19, 1999 arrest, investigated the claim and verified its validity through a fingerprint comparison. Having done so, she then undertook to correct all records pertaining to her arrest of Reginald, recharged Reginald under the correct name, and added additional charges against Reginald for giving false statements. She also informed the Baltimore City State's Attorney's Office, Central Records, and the Baltimore County Detention Center of the misidentification. There is no dispute that Officer Mohr, in fact, corrected the records of this arrest. Rather, Tray's claim against Officer Mohr centers on his complaint that, although Officer Mohr undertook a number

of steps to correct Reginald's deceptive conduct, she did not undertake steps to investigate all prior arrests of a "Tray Carter" by any other officer to ensure that Reginald had not previously impersonated him. Had she done so, Tray claims, Officer Mohr would have learned of Reginald's earlier deception of Officer Smith, Officer Smith's misidentification would have been corrected, no bench warrant would have been issued by the judge for "Tray Carter," and Officer Kirk would not have arrested and detained Tray in May 1999.

Like the district court, we are of the view that Officer Mohr, upon learning of the problem underlying her arrest of the suspect, responded in a reasonable fashion to correct the known discrepancy in a timely manner. There is no evidence that Officer Mohr had any reason to believe there had been prior incidents of Reginald's being arrested and using Tray's name. Accordingly, Tray also failed to demonstrate actions that rose to the level of negligence, much less the deliberate or intentional acts necessary to establish a violation of his due process rights. The district court properly granted summary judgment to Officer Mohr.[2]

Finally, we turn to Tray's due process claim against Officer Kirk, which arose out of Tray's arrest in November 1999. Tray asserts that Officer Kirk violated his due process rights because Officer Kirk failed to adequately investigate whether he had "arrested the right man." This claim likewise fails to survive summary judgement.

Officer Kirk arrested Tray Carter on an outstanding arrest warrant issued by a judge for "Tray Carter." In short, Officer Kirk arrested the man the Maryland court directed him to arrest on a facially valid bench warrant, and Officer Kirk was under no duty to second-guess

[2]We summarily reject any claim that Officer Mohr's actions were responsible for Tray's extended detention by Baltimore City officials, in violation of his due process rights. The parties seem to agree that the Baltimore City police officer arrested Tray on the outstanding warrant for Reginald because "Tray Carter" was listed as an alias for Reginald Carter. Even if Officer Mohr's actions resulted in the reflection of this alias on the records, those actions cannot be faulted in any way. There is no dispute, of course, that Reginald Carter was indeed using "Tray Carter" as an alias.

or otherwise investigate whether the judge issued the warrant in the wrong name. Tray's claim that Officer Kirk was deliberately indifferent to his rights because he "ignored" Judge Nance's order also fails. Even if Officer Kirk had looked at the order and accepted its validity, that order would have had no effect, legal or otherwise, upon the outstanding bench warrant issued by the County judge for Tray's arrest.[3] *Cf. Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) (rejecting due process claim where plaintiff was mistakenly arrested in place of his brother because his brother had previously shown plaintiff's identification to official); *Mitchell v. Aluisi*, 872 F.2d 577, 579 (4th Cir. 1989) (rejecting due process claim for plaintiff's arrest and detention on a facially valid warrant which should have been cancelled even though plaintiff informed the officer that the charges had been dropped). Accordingly, Tray has failed to demonstrate that Officer Kirk violated his due process rights by arresting and detaining him on the facially valid warrant for his arrest.

For the foregoing reasons, we conclude that Officer Smith, Officer Mohr, and Officer Kirk were not deliberately indifferent to Tray's due process rights under the Fourteenth Amendment. Accordingly, Tray is not entitled to recovery against the three individual defendants or against Baltimore County on this basis.

### B.

We now turn to Tray's claim that Officer Kirk violated his rights under the Fourth Amendment to be free from unreasonable searches and seizures during the vehicle stop on May 27, 1999.

---

[3]In any event, the circumstances underlying Judge Nance's order were not really analogous to the error Tray was claiming to have been made with regard to the warrant Officer Kirk was serving. Judge Nance's order would only have informed Officer Kirk that a Baltimore City police officer had mistakenly arrested Tray on a properly-issued warrant for the arrest of "Reginald Carter." In contrast, Tray claims that he was trying to convince Officer Kirk that the outstanding warrant issued in the name of "Tray Carter" should have been issued in the name of "Reginald Carter." Of course, even if it was analogous, it would not have changed Officer Kirk's duty to arrest Tray on the warrant issued in his name.

The Fourth Amendment to the United States Constitution guarantees that governmental intrusions into privacy by means of searches and seizures must be reasonable. *See United States v. Sakyi*, 160 F.3d 164, 167 (4th Cir. 1998). Because a traffic stop of a vehicle constitutes a seizure within the meaning of the Fourth Amendment, such stops must also be reasonable under the circumstances. *See Whren v. United States*, 517 U.S. 806, 810 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred," *id.*, or "a reasonable suspicion supported by articulable facts that criminal activity may be afoot," *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks omitted). As long as the officer has a reasonable suspicion that even a minor traffic offense has occurred or is occurring, the stop of the vehicle is constitutionally permissible. *See United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993).

In addition, because "every traffic stop poses a meaningful level of risk to the safety of police officers," *Sakyi*, 160 F.3d at 168, police officers effecting a traffic stop may also order, as a matter of course, the driver and passengers to step out of the vehicle with no more suspicion than that justifying the traffic stop itself. *See Maryland v. Wilson*, 519 U.S. 408, 410 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (per curiam). However, while this generalized risk is "sufficient justification to order occupants to exit a lawfully stopped vehicle," *Sakyi*, 160 F.3d at 168, a pat-down or frisk of the occupants who have exited the vehicle may not be justified on that basis, *see id.* at 168-69 (holding that "we may not rely on a generalized risk to officer safety to justify a routine 'pat-down' of all passengers as a matter of course"). Rather, this more intrusive action must be justified by a separate reasonable, articulable suspicion that criminal activity may be afoot and the "risk of danger that arises from officer action divorced from the safeguards of a full-blown arrest." *Id.* at 168. "[W]here the intrusion is greater than an order to exit the car, the Court requires commensurately greater justification." *Id.*

For the following reasons, we hold that the district court did not err in granting summary judgment with regard to Tray's claims that Officer Kirk violated his Fourth Amendment rights by ordering him to exit the vehicle and by arresting him on the outstanding warrant.

First, it is undisputed that Officer Kirk stopped Spratley's vehicle because it had a burned-out license plate light. Thus, Officer Kirk had a reasonable, articulable suspicion that the vehicle was being operated in violation of Maryland law and, therefore, the stop did not run afoul of the Fourth Amendment. Officer Kirk was also entitled to order both Spratley and Tray to exit the vehicle. Officer Kirk also did not violate Tray's Fourth Amendment rights by arresting Tray on the outstanding warrant. Upon learning of Tray's identity and discovering the existence of the outstanding bench warrant for his arrest, Officer Kirk placed Tray under arrest and transported him to the police station. Tray complains that Officer Kirk arrested him on the basis of an arrest warrant that should have been issued for his brother Reginald, but he does not dispute that Officer Kirk was acting on the basis of a facially valid warrant for Tray's arrest issued by a judge. Once Kirk had ascertained Tray's identity, he had probable cause (and indeed the duty) to serve the warrant and take Tray into custody.

The district court did err, however, in granting summary judgment to Officer Kirk in one narrow respect. After lawfully stopping the vehicle, Officer Kirk determined that Spratley was operating the vehicle with a suspended license and would need to be arrested for that offense. Officer Kirk also lawfully placed Tray in custody upon ascertaining Tray's identity. However, the method by which Officer Kirk ascertained Tray's identity is the subject of at least some uncertainty at this point, and perhaps some dispute.

According to Tray, Officer Kirk ordered Tray to exit the vehicle and place his hands on the roof, at which point he began to frisk him for weapons. Officer Kirk then reached into Tray's pocket and removed Tray's driver's license (which was loose in his pocket and could not have been mistaken for a weapon), without his consent and without responding to Tray's questions as to why he was being detained and searched. Although Tray complains that this intrusion violated his Fourth Amendment right to be free of an unreasonable search and seizure, Tray agrees that Officer Kirk did not use abusive language or physically mistreat him during the pat-down or the arrest.

For his part, Officer Kirk confirmed that Tray was the passenger in the vehicle that he stopped that day and that he arrested the driver. Unfortunately, Officer Kirk testified that he had only a limited mem-

ory of the actual traffic stop. According to his testimony, police officers are not required to complete paperwork or keep files for warrants that they serve. In circumstances where a traffic stop reveals that the driver is operating the vehicle with a suspended license, Officer Kirk testified that his normal procedure would be to determine whether a passenger can drive the vehicle and save the time and money associated with towing.[4]

On summary judgment, we must accept as true Tray's version that Officer Kirk reached into Tray's pocket during a pat-down and removed his driver's license without his consent. If a fact-finder

[4]Specifically, Officer Kirk's testimony concerning his normal procedure in such cases is as follows:

Q: Why did you ask for his identification?

A: [I]f there is a licensed driver in a car, usually I give the owner the benefit of the doubt so I don't have to tow his car, save him $150 plus storage. It's usually just cutting the guy a break so you don't have to pay a tow fee when he gets out of jail or if he can't drive the vehicle. I think that's why I did it. We talked about it before and that's the only reason I would really think of getting an ID unless he offered it to me. I might have just asked for it and he offered it up.

. . .

Q: Why would you check . . . his ID? Let's say he gives you an ID, you arrest the other guy, the driver . . . and the driver says he can take my car, right?

A: Then it's to verify a licensed driver. I can't let a suspended or non-licensed driver drive away. Then my job would be on the line.

Q: Okay. So he has a license, you looked at it. Why did you run it through the system?

A: Make sure it's valid. I mean having a driver's license doesn't mean it is valid.

Q: Okay. What would you have called into the system?

A: Either his name, date of birth, sex, race, or just his soundex number. Either one you can run it by.

J.A. 86-87.

determines that the pat-down occurred and that Officer Kirk reached into Tray's pocket without his consent to retrieve his loose driver's license, then Tray will have established a technical violation of the Fourth Amendment.[5] However, even if true, neither the pat-down nor the removal of the driver's license during the pat-down was accompanied by actual injury. Consequently, Tray is entitled to, at most, an award of nominal damages for the violation. *See Randall v. Prince George's County, Md.*, 302 F.3d 188, 209 n.30 (4th Cir. 2002) (noting that "in the § 1983 context[,] . . . being seized for a minimal amount of time does not constitute an actual injury warranting compensatory damages); *Norwood v. Bain*, 166 F.3d 243, 245 (4th Cir. 1999) (en banc) (concluding that plaintiffs who were unconstitutionally searched and seized for a brief period of time were only entitled to nominal damages); *Price v. City of Charlotte*, 93 F.3d 1241, 1256 (4th Cir. 1996) (same).

## III.

For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*

---

[5]The excerpts of the testimony of Officer Kirk provided to us do not speak to the question of whether a pat-down occurred or, if so, whether Officer Kirk had a reasonable, articulable suspicion that Tray posed a risk to his safety. According to Tray's testimony, however, the alleged pat-down occurred at or near the time of Spratley's arrest. Thus, the fact-finder's determination that a pat-down occurred would not automatically establish a violation of the Fourth Amendment. It would also be reasonable to conclude that the generalized risk present at any routine traffic stop may be significantly heightened once an officer determines that an occupant of the vehicle must be arrested.