

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-31-2008

# Ferrone v. Onorato

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4299

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ferrone v. Onorato" (2008). *2008 Decisions.* Paper 291.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/291

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-4299

_____

ROCK FERRONE;
ROCK AIRPORT OF PITTSBURGH, L.L.C,

Appellants

v.

DAN ONORATO, individually and officially;
DENNIS DAVIN, individually and officially;
ALLEGHENY COUNTY

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cv-00303)
Chief District Judge: Honorable Donetta W. Ambrose
Magistrate Judge: Honorable Francis X. Caiazza

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 12, 2008

_____

Before: SLOVITER, FUENTES and ALDISERT, Circuit Judges

(Filed: October 31, 2008)

_____

OPINION OF THE COURT

_____

ALDISERT, Circuit Judge.

The District Court for the Western District of Pennsylvania did not err in accepting the Report and Recommendations of the Magistrate Judge and in ordering summary judgments in the underlying 42 U.S.C. § 1983 action in favor of Dan Onorato, Chief Executive of Allegheny County, Pennsylvania; Dennis Davin, the County's Director of Economic Development; and the County itself.

The District Court correctly determined that Rock Ferrone and Rock Airport of Pittsburgh, L.L.C. ("RAP") failed to meet the burden of showing that they were denied civil rights assured by the petition clause of the First Amendment. See U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."). Nor did the District Court err in similarly treating Appellants' claims under the Fourth Amendment and the due process and equal protection clauses of the Fourteenth Amendment or exceed its discretion in denying Appellants' motion to amend. Accordingly, we will affirm the orders of the District Court dated June 13, 2006, and October 9, 2007.

Because we write only for the parties who are familiar with the facts and the procedures in the District Court, we will truncate our discussion.[1]

---

[1] This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291. Our review of a district court's grant of summary judgment is plenary. Johnson v. Knorr, 477 F.3d 75, 81 (3d Cir. 2007). Applying the same test used by the District Court, we will affirm if, drawing all inferences in favor of the nonmoving party, we agree that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The "mere

2

I.

In late 2004, in response to complaints from his staff in the Economic Development Department, Dennis Davin instructed the County Division of Computer Services ("DCS") to block his department from receiving automated, unsolicited emails sent from the address "press@rock-port.com." In response, DCS placed a "spam" block on the domain name "@rock-port.com." The spam filter had the unintended effect of preventing delivery of any email originating from that domain to all County email addresses, blocking email not only from "press@rock-port.com" but also communication from Ferrone's personal email address. From January 4, 2005, to February 8, 2005, a total of fourteen emails sent from the "@rock-port.com" domain to County email addresses were blocked before the situation was discovered by Ferrone and Davin and the block lifted. Throughout the same time period, Ferrone and RAP, the company for which he is the managing partner and president, were engaged in an ongoing dispute and negotiations with the County over contested economic development funding, the particulars of which are the subject of a separate companion appeal filed by the Appellants.

II.

_____

existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248, 252 (1986).

We review the District Court's denial of Ferrone's request for leave to amend for abuse of discretion. Winer Family Trust v. Queen, 503 F.3d 319, 325 (3d Cir. 2007).

3

In the District Court, Ferrone and RAP (collectively "Ferrone") based their First Amendment right to petition claim on the theory that "the Constitution is indubitably implicated when a state official blocks, intercepts, and/or redirects any email sent by a private party that was intended for other elected officials." Pls. Opp'n Br. at 3 (Aug. 9, 2007). We reject any generalization that the mere fact of blocking alone, regardless of intent, rises to a constitutional violation, and we resist Ferrone's attempt to plump up a specious claim by invoking the First Amendment. "Negligent official conduct does not instantly become actionable under § 1983 because it is termed an infringement of the right to petition rather than a violation of due process." Pink v. Lester, 52 F.3d 73, 76 (4th Cir. 1995). On the evidence presented in this case, no reasonable factfinder could have found a violation of Ferrone's First Amendment Rights.

## A.

"At its core, the right of petition protects a personal right to bring complaints about public policy directly to officers of the government." Ronald J. Krotoszynski & Clint A. Carpenter, The Return of Seditious Libel, 55 UCLA L. Rev. 1239, 1246 (2008). Substantive rights under the petition clause are rarely litigated, but "the right to petition is cut from the same cloth as the other [First Amendment] guarantees," McDonald v. Smith, 472 U.S. 479, 482 (1985), and deprivation of the right to petition mirrors the intent requirements of due process analysis. See Pink, 52 F.3d at 76-77 (extending Supreme Court holding that an official's negligent act does not implicate the due process clause to

the First Amendment right to petition because, "[j]ust as 'deprivation' [in the Fourteenth Amendment] suggests an intentional denial, an 'abridgement' [under the First Amendment] connotes a conscious act . . . and thus both should be read to imply the same degree of intent.") (referencing holding of Daniels v. Williams, 474 U.S. 327 (1986)). Accordingly, to establish a claim under the petition clause, Ferrone had to show that the Appellees acted "with reckless or intentional indifference to his constitutional rights"; mere negligence will not suffice. Woods v. Lemonds, 804 F. Supp. 1106, 1109 (E.D. Mo. 1992), aff'd, 991 F.2d 802 (8th Cir. 1993) (table).

B.

In addition, the Magistrate Judge recognized that Ferrone was required to establish actual harm or prejudice resulting from the alleged deprivation of rights. This Court has recognized this precept most obviously through our discussion of "access to court" claims brought under the petition clause. See Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) ("an individual's constitutional right of access to court is protected by the First Amendment's clause granting the right to petition the government for grievances") (citations omitted) and Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006) (claim for denial of court access requires evidence of actual injury in the form of a consequential infringement of the protected right) (citation omitted), cert. denied, __ U.S. __, 127 S.Ct. 1822 (2007).

C.

5

Ferrone could not meet these burdens. Rather, Ferrone's pleadings consisted of a flurry of unsubstantiated allegations of conspiracy on the part of Davin and Onorato to deprive him of the ability to communicate with County elected officials in retaliation for his financial disputes with the County and outspoken criticism of official policies. The Magistrate Judge properly recognized that "[m]uch of [Ferrone's] briefing consists of alarmist exaggeration bearing no relationship to the facts learned in discovery." Ferrone v. Onorato, No. 05-303, slip op. at 11 (W.D. Pa. Sept. 6, 2007) ("Mag. R&R"). The facts showed that Davin requested that DCS block email from "press@rock-port.com" from receipt by his staff only and that Onorato had no involvement in that decision whatsoever. There was no evidence produced by Ferrone in the District Court that would contradict the Appellees' explanation of how and why the domain "@rock-port.com" was added to the County spam filter–any conclusion to the contrary would be raw conjecture.

In short, there was no evidence from which a factfinder could reasonably conclude that Onorato or Davin intended to violate Ferrone's First Amendment rights or acted with reckless indifference to those rights. Negligence, not nefarious scheming, was the culprit here, and such negligent ministerial action falls short of the affirmative abuse of governmental power against which the Constitution guards.

D.

Moreover, there is a complete dearth of evidence to support the assertion that Ferrone suffered actual prejudice or harm as a result of the email block. The Magistrate Judge reviewed the evidence developed below and wrote:

6

> Ferrone's greatest concern, that he was denied access to County Council, has no basis in fact. . . . Aside from his test message to Council members the day before DCS lifted the block, the record reveals only one blocked email sent to a Council member, Mr. Gastgeb, on January 11, 2005. . . . When Mr. Gastgeb did not reply, [Ferrone] telephoned him but received no response. . . . This surely was no fault of [Onorato and Davin], and there is no evidence that the email blockage had any discernable effect on [Ferrone's] Airport project. . . . The evidence also shows that, the blocked emails notwithstanding, Ferrone remained in regular contact with both Council members and Davin's department. . . . In sum, [Ferrone] makes far too much of the Defendants' inadvertent, if negligent, blocking of fourteen emails over the period of approximately five weeks.

Mag. R&R at 13-14.

The District Court thus did not err when it concluded that there were no facts that would support a claim of actual harm or prejudice as a result of Appellants' emails being inadvertently blocked. Cf. Pink, 52 F.3d at 76 ("The inadvertent misrouting of a request form simply does not implicate the fundamental democratic principle of the right to petition; namely, that a republican government not turn a deaf ear to its citizenry.").

III.

Likewise, Ferrone's First Amendment retaliation claim fails for want of factual basis. As the Magistrate Judge's recommendation concluded:

> Perhaps the simplest way of putting the [retaliation] issue to rest is to reiterate the court's prior conclusions, namely that the Defendants had no knowledge or intention of blocking Ferrone's personal emails, nor did they exhibit a reckless disregard for his constitutional rights. The Defendants did not

7

> "retaliate" against the Plaintiff, and this theory is without merit.

Mag. R&R at 14-15 n.8.

A government actor can only "retaliate" knowingly. In this instance, Onorato and Davin had neither the intent to block so broadly nor knowledge that Ferrone's emails were being blocked other than those from "press@rock-port.com," therefore, there could have been no retaliation.

IV.

Ferrone further failed to identify sufficient evidence and legal authority in support of his due process, equal protection, and Fourth Amendment causes of action. To state a "class of one" equal protection claim, Ferrone needed to "allege[] that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). "[A]t the very least, to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). Ferrone presented no evidence that other entities who sent automated, unsolicited emails to County email addresses were treated differently. Furthermore, Appellees established a rational basis–staff complaints about receiving unsolicited mass emails–for seeking to block email from "press@rock-port.com."

8

Nor did Ferrone provide evidence that would lead a reasonable factfinder to conclude that Appellees conducted an unreasonable search or seizure under the Fourth Amendment when they intercepted emails intended for other members of the County government, or that the email blocking was done for the purpose of depriving him of property interests in violation of due process. At hearing on summary judgment and before us, Ferrone cites no compelling evidence or authority for these contentions.

V.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given "when justice so requires." However, the decision to grant or deny leave is, in the first instance, within the discretion of the court. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Leave may be denied in the presence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, <u>futility of amendment</u>, etc." <u>Id.</u> (emphasis added).

The District Court did not exceed its discretion when it denied as moot Ferrone's motion for leave to amend. Ferrone sought leave to amend his complaint on September 25, 2007, after the Magistrate Judge had filed his Report and Recommendation on September 6, 2007, recommending that the complaint be dismissed. It was well within the District Court's discretion to deny Ferrone's motion under these circumstances, especially given that the matter to be added to the complaint already had been considered by the Magistrate Judge in ruling on the motion for summary judgment. <u>Cf.</u> <u>Roberts v. Ariz. Bd.</u>

9

of Regents, 661 F.2d 796, 798 (9th Cir. 1981) (motion to amend pleadings denied as prejudicial when offered at "the eleventh hour" after discovery nearly complete and motion for summary judgment pending).

\* \* \* \* \*

We have considered all contentions raised by the parties and conclude that no further discussion is necessary.

The Orders of the District Court will be affirmed.