Shannon PAINE, Plaintiff–Appellee,

v.

**CITY OF LOMPOC, Defendant,**

and

Daniel P. Ast, individually and as a peace officer; Timothy E. Tietjen, individually and as a peace officer, Defendants–Appellants.

No. 99–56347.

United States Court of Appeals,

Ninth Circuit.

Argued and Submitted Jan. 8, 2001

Filed Sept. 13, 2001

Karen K. Peabody, Carrington & Nye, Santa Barbara, California, for the defendants-appellants.

Thomas E. Beck, Los Angeles, California, for the plaintiff-appellee.

Before: TROTT, THOMAS and BERZON, Circuit Judges.

BERZON, Circuit Judge:

Shannon Paine was arrested on July 4, 1993, in Pismo Beach, California, by police officers from the Cities of Pismo Beach and Lompoc. He was charged with resisting arrest and with battery on a police officer. The prosecutor later dropped the charges.

In a § 1983 suit against the municipalities and several individual police officers ("*Paine I*"), Paine claimed that he was subjected to excessive force during the arrest. In particular, Paine contended that Pismo Beach police officer Robert Jones, who knew and disliked him, injured his legs. Daniel Ast and Timothy Tietjen, both Lompoc police officers and individual defendants in *Paine I*, testified that they helped restrain Paine during his arrest, but denied knowing who, if anyone, had restrained Paine's legs. Other witnesses testified that Jones did not take part in restraining Paine. The jury returned a verdict for the defendants, upheld by this court on appeal. *See Paine v. City of Lompoc*, 160 F.3d 562 (9th Cir.1998).

In this lawsuit ("*Paine II*"), Paine alleges that Ast and Tietjen participated in a conspiracy to suppress and fabricate evidence pertinent to *Paine I* about Jones' role in the arrest. Specifically, Paine claims that Ast and Tietjen helped keep secret the possible testimony of Pismo Beach police officers Mark Stewart and John Underhill. Both Stewart and Underhill, Paine maintains, would have contradicted Ast's and Tietjen's trial and deposition testimony in *Paine I* regarding Jones' role, provided evidence supporting the contention that Jones had personal reasons to arrest and attack Paine, and given testimony from which a jury could conclude that the defendants in *Paine I* purposely kept

evidence of Jones's involvement from Paine and from the jury. Paine also claims that Ast and Tietjen hid the identities of civilian eyewitnesses to Paine's arrest, and that those eyewitnesses also would have supported Paine's version of the events surrounding the arrest.

The parties had full opportunity to conduct discovery in *Paine II*. After discovery closed, Ast, Tietjen, and the City of Lompoc sought summary judgment on the grounds that Paine failed to state a cognizable § 1983 cause of action for a coverup in *Paine I*. Ast and Tietjen also sought summary judgment on the additional ground that, under *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), they were entitled to absolute immunity from liability because of their role as witnesses in the earlier lawsuit. In his response to appellants' motion for summary judgment, Paine offered the depositions of Underhill, Stewart, and civilian eyewitness John Carranza.

Underhill testified as follows in his deposition: He was present at the arrest. Jones and another Pismo Beach police officer, both of whom knew Paine, had long planned to fabricate criminal charges against him. Further, shortly after the July 4 incident, Underhill was summoned to meet with other Pismo Beach officers. Those officers suggested that Underhill might be the officer whose legs were shown in a photograph of Paine's arrest, stating that it would be better if that officer were not Jones. The inquiring officers asked Underhill to bring in the shoes he had worn that day, but the shoes he first brought in did not match those of the officer in the photograph. Underhill then brought in a second pair he had possibly worn that day. Those shoes were never returned to him, despite his inquiries, and he never learned whether or not they matched the shoes in the photograph.

Stewart said in his deposition: He was on duty at the pier the night of the incident and observed the incidents underlying *Paine I*. Jones, who, according to Stewart, had a "long-standing dislike" of Paine, instigated himself into the arrest incident despite orders to stay at his post and used force upon Paine. Moreover, members of the Pismo Beach Police Department knew that Jones, in other circumstances, had been untruthful about probable cause for arrest and had used excessive force. Further, after the July 4 incident, several Pismo Beach officers joked about spraying pepper spray directly in Paine's face, contrary to their testimony in *Paine I*. Finally, Stewart was known within the Department for resisting participation in fabrication and misrepresentation concerning incidents potentially embarrassing to the Department. Despite his presence at the scene, he was never contacted in connection with the Department's internal investigation of the Paine incident.

Carranza's testimony was that he had been present in the crowd at Paine's arrest, that he thought the police had tried to keep the crowd from seeing the police restrain Paine, and that an officer told him to keep back "if he knew what was good for him." He also said that the officers present took no statements from any of the hundreds of civilian eyewitnesses.

The district court denied the defendants' summary judgment motion without explanation. When Ast and Tietjen (but not the city) appealed, this court remanded for a statement of reasons as to the basis for denying summary judgment.

The district court thereupon issued a lengthy written opinion, explaining that Paine's case could go forward because there was evidence to support the conclusion that "[t]he conspiracy alleged by plaintiff was formulated and complete as to

some or all of the defendants at the scene of plaintiff's arrest or shortly thereafter" and that the defendants "acted in official capacities, outside of court, to assure that favorable testimony given by some witnesses would not be impeached by others." There was also evidence that the defendants accomplished this goal, said the district court, by, among other things, "conceal[ing] the involvement of Jones in the arrest ..., produc[ing] the appearance that independent investigations conducted in good faith ... had resulted in findings that no wrongdoing had occurred ..., and conceal[ing] the fact that there were police observers of the relevant events who, if called as witnesses, would materially contradict the testimony of other officers." The district court recognized, that "the proof that ... evidence was withheld pursuant to a conspiracy in which any individual defendant participated is less [clear]," but declined to review the evidence concerning individual defendants' participation in the alleged conspiracy on summary judgment. The district court also held that, aside from the immunity issues, Paine had stated a viable § 1983 cause of action in *Paine II* and presented sufficient evidence to survive defendants' substantive motion for summary judgment.

## I. Appellate Jurisdiction

This appeal is from a denial of a motion for summary judgment based in part on immunity grounds. We are therefore faced first with the question whether we have jurisdiction over the appeal, given that only final judgments are ordinarily appealable, 28 U.S.C. § 1291, and that none of the express exceptions to the finality rule are applicable. *See* 28 U.S.C. § 1292.

■ As a general matter, appeals from denials on summary judgment of claims of absolute immunity come within the collateral issue doctrine first recognized in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (because "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action," "the denial of a substantial claim of absolute immunity is an order appealable before final judgment"); *In re Montgomery County*, 215 F.3d 367, 374–75 (3d Cir.2000).

■ Witnesses, including police witnesses, are accorded absolute immunity from liability for their testimony in judicial proceedings.[1] The purpose of such immunity is to encourage witnesses to come forward and speak freely in court by relieving the potential defendant of any fear that he will later have the burden of litigating the propriety of his conduct as a witness. *Briscoe*, 460 U.S. at 335–36, 103 S.Ct. 1108. Denying that immunity on summary judgment compromises the reasons for the protection accorded court appearances, by subjecting the defendant to the rigors and distractions of standing trial even if he or she is ultimately found not liable on testimonial immunity grounds.

1. Ast and Tietjen asserted a qualified immunity defense in their answer, but they did not claim absolute immunity in that pleading. Because the two defenses are distinct, raising the qualified immunity defense does not suffice to invoke absolute immunity as well. *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996). Ast and Tietjen did, however, raise an absolute immunity defense in their motion for summary judgment. Because Paine has not argued that he suffered prejudice due to the defendants' tardy assertion of this defense, the defense is not waived. *Cf. Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir.1993) (failure to assert immunity defense in answer does not waive the defense as long as its assertion at the summary judgment stage does not prejudice the plaintiff).

As we have indicated, albeit implicitly, before, *see Cunningham v. Gates,* 229 F.3d 1271, 1291 (9th Cir.2000) (reviewing the denial of a summary judgment motion based on absolute witness immunity), denial of the absolute immunity accorded witnesses and participants in alleged conspiracies to testify falsely, *Franklin v. Terr,* 201 F.3d 1098, 1101 (9th Cir.2000), like denials of other forms of absolute immunity, can be a collateral order that is appealable in the absence of a final order.

■ In this case, although denying summary judgment, the district court left open the possibility of a later determination that appellants are in fact absolutely immune. This decision thus compelled the defendants to stand trial for their conduct, thereby denying them one of the benefits of any immunity to which they might be entitled as effectively as if the district court had finally found that they lacked immunity. Such an effective denial of complete immunity can, also, be an appealable collateral order. *In re Montgomery County,* 215 F.3d at 374 (where the district court did not finally address appellants' claims to absolute immunity, "we have interlocutory jurisdiction to review an implied denial of those claims," because "[a]llowing this case to proceed to trial without considering the Appellants' immunity claims would irreversibly deprive them of any right to avoid trial"); *id.* (citing cases to the same effect from other circuits). We therefore have jurisdiction to decide the purely legal question whether, as the district court held, the defendants, although witnesses at the trial, are not immune from suit for alleged participation in a pretrial conspiracy to suppress or fabricate evidence. *See Collins v. Jordan,* 110 F.3d 1363, 1370 (9th Cir.1996).

## II. The Scope of Witness Immunity

■ Witnesses, including police witnesses, are immune from liability for their testimony in earlier proceedings even if they committed perjury. *Briscoe,* 460 U.S. at 345, 103 S.Ct. 1108.[2] Recognizing that plaintiffs could easily circumvent witness immunity by alleging that a witness had conspired to commit perjury rather than alleging that the witness had actually committed perjury, we have held that witness immunity also extends to conspiracies to commit perjury. *Franklin,* 201 F.3d at 1101–02; *Cunningham,* 229 F.3d at 1291.

As witnesses, then, Ast and Tietjen are entitled to absolute immunity from liability for their testimony in *Paine I* and from allegations of conspiracy to commit perjury in that lawsuit. This immunity, however, is not limitless.

■ First, this immunity does not shield non-testimonial conduct. As this court recently held, even though defendant police officers are absolutely immune from liability for their alleged perjury and for any alleged conspiracy to commit perjury, they "[o]bviously" enjoy no immunity for "non-testimonial acts such as fabricating evidence." *Cunningham,* 229 F.3d at 1291. Second, Ast and Tietjen are not immune from liability for any conspiratorial conduct not "inextricably tied" to their testimony. *Franklin,* 201 F.3d at 1102 (ex-

---

2. Absolute witness immunity does not extend to "complaining witnesses," those individuals whose allegations serve to bring about a prosecution. *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Harris v. Roderick,* 126 F.3d 1189, 1198–99 (9th Cir. 1997) (holding that police officer witnesses are not entitled to absolute witness immunity for perjured grand jury testimony that brings about a wrongful prosecution). The complaining witness exception to absolute immunity is not at issue in this case because Paine does not challenge Ast's and Tietjen's roles in the underlying wrongful prosecution (which was dropped), but instead challenges their role in the *Paine I* lawsuit.

tending absolute immunity to conspiracy to commit perjury where the witnesses conspired to present consistent testimony at trial).

These conclusions regarding the scope of witness immunity follow from the purposes of such immunity. As *Briscoe* explained, the common law purpose of witness immunity, to encourage witnesses to come forward and speak candidly about what they know, 460 U.S. at 333, 103 S.Ct. 1108, remains the rationale for recognizing the immunity in contemporary § 1983 actions. Broad witness immunity facilitates the substantial public interest in eliciting the truth, even though it occasionally protects witnesses who knowingly give false testimony. *Id.* at 345, 103 S.Ct. 1108.

■ The policy interests that favor eliciting candid evidence at trial cannot be squared with the theory appellants advance here-that witnesses should be absolutely immune from liability not only for own testimony and for helping to prepare the testimony of other witnesses, but also for tampering with documentary or physical evidence or preventing witnesses from coming forward. For one thing, the interest in encouraging witnesses to come forward would be undermined, not enhanced, if some witnesses could escape liability for suppressing the identities of other potential witnesses. Additionally, a pretrial, out-of-court effort to keep certain witnesses or physical evidence from the opposing party or to fabricate physical evidence need not involve anyone who will participate in the trial as a witness, and so is not "inextricably tied"-or tied at all-to any witness' own testimony. If a potential witness does happen to be involved, there is no reason that participation should be insulated from liability simply because of his dual roles as witness and fabricator (although the potential witness of course

retains his absolute immunity as to his own testimony in court).

■ Contrary to appellants' arguments, the decisions concerning the scope of the absolute immunity accorded prosecutors support rather than detract from this conclusion. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) explained that absolute prosecutorial immunity, which protects the prosecutor from liability for knowingly using perjured testimony, extends to suppression of evidence *at trial* because a perjury claim can easily be restated as a claim of suppressing the evidence "upon which the knowledge of perjury rested." *Id.* at 431 n. 34, 96 S.Ct. 984. At the same time, as we recently explained in *Milstein v. Cooley*, 257 F.3d 1004 (9th Cir.2001), "[t]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Id.* at 1008 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)). In particular, prosecutors are not absolutely immune for actions involving the fabrication of evidence as part of the pre-prosecution investigation, *Milstein*, at 1011; "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606 (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir.1973)). It surely follows that when a detective or police officer himself performs out-of-court investigative functions, his behavior as well is to be evaluated according to the immunity standards applicable to those functions, not to those applicable to in-court witnesses, even if the same individual later testifies as a witness.

The Sixth Circuit recently reached similar conclusions regarding the scope of ab-

solute witness immunity. *Spurlock v. Satterfield,* 167 F.3d 995 (6th Cir.1999). In *Spurlock,* the plaintiff, who had been convicted for murder, brought a § 1983 action against Satterfield, one of the police officers who testified at his trial. Conceding that Satterfield was entitled to absolute immunity for his testimony, the plaintiff argued that no such immunity shielded Satterfield's participation in a conspiracy to fabricate evidence against him and then to cover up this conduct. *Id.* at 1001. Even though Satterfield's trial testimony relied upon the false evidence he had helped manufacture, the court emphatically refused to extend absolute witness immunity this far. To the contrary, wrote the *Spurlock* court, "[t]he simple fact that acts may ultimately lead to witness testimony does not serve to cloak them with absolute testimonial immunity." *Id.* Allowing witnesses to so launder their non-testimonial activities through their testimony would transform the immunity from "a shield to ensure that those individuals intimately involved in the judicial process are able to carry out their responsibilities without the constant threat of vexatious lawsuits" into a "sword allowing them to trample the statutory and constitutional rights of others." *Id.* at 1003–04.

■■■ Our cases and *Spurlock,* then, demonstrate that, as the district court held,[3] absolute witness immunity does not shield an out-of-court, pretrial conspiracy to engage in non-testimonial acts such as fabricating or suppressing physical or documentary evidence or suppressing the identities of potential witnesses. *Cf. Dooley v. Reiss,* 736 F.2d 1392, 1394–95 (9th Cir.1984). So, for example, if any evidence had connected Ast and Tietjen to the incident Underhill described concerning the photograph of an officer's legs, the mere fact that Ast and Tietjen later became witnesses in *Paine I* would not shield them from liability for their participation in that alleged pretrial coverup, when other officers who were also involved but did not ultimately testify would enjoy no such protection. Similarly, if Ast and Tietjen had participated in the alleged pretrial effort to withhold from Paine during the *Paine I* litigation the information that Stewart was a witness to the arrest and would identify Jones as a participant in the incident, their separate status as trial witnesses would not mandate the conclusion that they were absolutely immune for suppressing Stewart's identity as a percipient witness.

■■■ We conclude that the district court did not err in determining that Paine's complaint contained some allegations against some of the individual defendants who had testified in *Paine I* that would not be shielded by the absolute immunity accorded to police witnesses.[4] We express no view, however, on the question whether the district court correctly decided that the conduct Paine alleges supports a cause of action under § 1983. Whether conduct such as Paine alleged falls outside the protective shield of absolute witness immunity and whether that conduct gave rise to a constitutional injury are entirely separate inquiries, involving both different

---

**3.** The district court rendered its original order denying the appellants' motion for summary judgment on July 13, 1999, and filed its lengthy clarification of the reasons for its order several months later on February 8, 2000. The court was apparently unaware of the decision in *Franklin,* filed on February 2. As a result, the district court's delineation of the limits of absolute immunity in its clarification is, understandably, not consistent in all respects with our decision in *Franklin* and the subsequent decision in *Cunningham.*

**4.** Ast and Tietjen did not argue on appeal that their involvement, if any, in the alleged fabrication and suppression conspiracy is qualifiedly immune from suit.

factual inquiries and different, independent legal analyses. Contrary to the appellants' arguments, we lack pendent appellate jurisdiction to address the latter, merits question on interlocutory review. *Swint v. Chambers County Comm'n,* 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995); *Cunningham,* 229 F.3d at 1286.[5]

### III. Evidence Connecting Appellants to an Out–of–Court Conspiracy

■ Because Paine's theory that the appellants are not protected by absolute immunity if they participated in the alleged out-of-court conspiracy is legally viable, the questions becomes (1) whether we have jurisdiction to inquire further into the district court's denial of summary judgment; and (2) if so, whether the record reveals any factual basis for finding that the appellants participated in the alleged conspiracy.

■ [7] (1) Determining whether Ast and Tietjen did participate in such a conspiracy cannot be left until trial, as the district court believed. As we explained in *Cunningham,* "in resolving a motion for summary judgment based on qualified immunity, a court must carefully examine the specific factual allegations against each individual defendant." 229 F.3d at 1287. There is no material difference between an order denying a motion for summary judgment based on qualified immunity and an order denying a motion based on absolute immunity that would favor a different analysis here.

■ Furthermore, quite aside from the special concerns regarding the need for early resolution of matters concerning immunity (*see, e.g. Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2155–56, 150

L.Ed.2d 272 (2001)), litigants are ordinarily entitled to resolution of their summary judgment motions through a determination whether there are material facts in dispute regarding the elements necessary to establish liability. Whether or not each defendant was a participant in the incidents that could give rise to liability is certainly such an element. So if a plaintiff cannot in its summary judgment motion factual submissions connect any particular defendant to the incidents giving rise to liability, that defendant is entitled to summary judgment and may not be required to go to trial.

■ Although the district court should have conducted the requisite inquiry into the record, that does not necessarily mean that we have jurisdiction to correct that error as part of our interlocutory review of the immunity question. *See Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (no appellate jurisdiction over a denial of summary judgment concerning an immunity issue as to an issue on appeal concerning the evidentiary adequacy of the plaintiffs' showing that particular conduct occurred); *compare Collins,* 110 F.3d at 1370 (interpreting *Behrens v. Pelletier,* 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), as holding that even after *Johnson,* "[a]n appellate court still has jurisdiction to consider defendants' assertion that the dispute of fact is not material.") Were we writing on a fresh slate, a good case could be made that we lack jurisdiction under 28 U.S.C. § 1291, because the failure to grant summary judgment, although improper, concerned nothing other than the merits of the question whether or not Ast and Tietjen are factually liable, as tested against allegations that, as we have just deter-

---

**5.** We also decline appellants' request that we review the district court's denial of summary judgment as to the City of Lompoc. The City

is not a party to this appeal, so we cannot consider the merits of Paine's claim against it.

mined, do not as a legal matter give rise to absolute immunity if true.

*Cunningham,* however, reached the merits of the propriety of the denial of summary judgment in circumstances precisely parallel to those before us: As here, the defendants were first determined to lack absolute immunity as witnesses as to fabricated evidence. The court then went on to determine that there was "not an iota of evidence that the ... officers in this case ever fabricated evidence." 229 F.3d at 1291.

*Cunningham* had previously recognized both that we generally lack jurisdiction over dispute-of-evidence-related matters concerning the denial of summary judgment even where immunity questions are at issue, and that that rule does not apply to "defendants' assertion that the dispute of fact is not material," because such an assertion "is solely one of law." 229 F.3d at 1286. The Court in *Cunningham* was therefore quite aware of the basic parameters of the appellate jurisdictional issues pertinent in situations such as the present one, and necessarily determined that the "any evidence" question parallel to the one here fell on the same "law" rather than "fact" side of the interlocutory appeal prohibition as questions concerning whether factual disputes are material. We are, given the indistinguishable circumstances, required to follow the lead of *Cunningham,* and consider at least whether there is *any*—"an iota"—of evidence supporting plaintiffs Ast and Tietjen's involvement in the alleged fabrication and suppression conspiracy. *See Nghiem v. NEC Elec.,* 25 F.3d 1437, 1441 (9th Cir.1994).

■ (2) After so doing, we conclude that this record, fully developed after the close of discovery, is entirely devoid of specific evidence connecting Ast and Tietjen to a non-testimonial conspiracy to fabricate or suppress physical or documentary evidence or to suppress the identities and testimony of Stewart, Underhill, or the civilian eyewitnesses to Paine's arrest.

Stewart's deposition indicates that he would have contradicted Ast's and Tietjen's testimony with regard to Jones' involvement and the use of force in Paine's arrest. But Paine has directed us to no evidence in the record showing that either appellant was aware that Stewart was present at the arrest or that he was a potential witness in *Paine I.* Nor have we found any such evidence on a careful independent review. Similarly, although Underhill testified to efforts by Pismo Beach police officers to suppress evidence of Jones' involvement in Paine's arrest, nothing in his testimony fingers Ast and Tietjen as participants in that conspiracy.

Indeed, Paine's evidence as a whole indicates that the alleged conspiracy was centered in the Pismo Beach Police Department, rather than among the Lompoc officers. Stewart, Underhill, Jones, the officers involved in the post-incident photograph and pepper spray matters, and the internal investigators were all members of the Pismo Beach department, making implausible even an inference in the absence of direct evidence that Ast and Tietjen were involved in the alleged conspiracy.

As for civilian eyewitness Carranza, he testified that *none* of the officers present at Paine's arrest, much less Ast or Tietjen in particular, tried to dissuade him from giving a statement regarding what he saw. Carranza also stated that during the arrest, one officer told Carranza to stay back "if he knew what was good for him." We doubt that an order to onlookers to stay back from the scene of an arrest, even a somewhat threatening one, supports, without more, the implication that the officer was doing so in order to assure that there would be no civilian witnesses to contradict

police testimony. And, in any event, Carranza does not identify the officer who spoke to him as Ast or Tietjen.

In sum, the district court's generalizations that the evidence supports going forward to trial against these two defendants do not hold up on close examination of the record. There is simply no evidence at all in this record demonstrating Ast's and Tietjen's participation in an out-of-court conspiracy to suppress evidence in *Paine I*. Because no specific evidence connects Ast or Tietjen to conduct that would fall outside the absolute immunity shield, there is no basis for holding them in this litigation any longer. *Cunningham*, 229 F.3d at 1291–92.[6]

REVERSED.

6. Because our holding fully resolves Ast's and Tietjen's appeal, we have no reason to consider their motion for reassignment to another district judge on remand.