Brian Deverick LEWIS, Plaintiff,

v.

John MITCHELL, et al., Defendants.

No. 04CV2468DMS(NLS).

United States District Court,
S.D. California.

Oct. 5, 2005.

Brian Deverick Lewis, Lancaster, CA, Pro se.

Attorney General, State of California Office of the Attorney General, San Diego, CA, for Defendants.

**ORDER: (1) ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; (2) GRANTING DEFENDANT JONES' MOTION TO DISMISS; (3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS.**

[Doc. Nos. 6, 11]

SABRAW, District Judge.

## I.

## INTRODUCTION

Pending before this Court are a motion by Defendant Jones to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6), and another motion by the remaining state Defendants to dismiss Plaintiff's complaint based on various legal grounds. Plaintiff has filed an opposition to both motions. State Defendants filed a reply to Plaintiff's opposition. The motion was referred to a United States Magistrate Judge, pursuant to 28 U.S.C § 636(b)(1)(B) and Civ. L.R. 72.3, for a Report and Recommendation ("R & R"). The Magistrate Judge found the issues appropriate for decision on the papers and without oral argument pursuant to Civ. L.R. 7.1(d)(1).

On July 11, 2005, the Magistrate Judge issued her R & R. The State Defendants filed objections to the R & R on August 5, 2005; Plaintiff filed objections to the R & R on August 9, 2005; and Defendant Jones filed a reply to Plaintiff's objections on August 19, 2005. Plaintiff filed a reply to Defendant Jones objections on August 26, 2005.

Based on this Court's *de novo* review of the R & R, Defendants' objections and Plaintiff's replies, the Court adopts in part and rejects in part the Magistrate Judge's R & R.

## II.

## FACTUAL & PROCEDURAL SUMMARY

Plaintiff is an inmate committed to the custody of the California Department of Corrections ("CDC"), and the events giving rise to the causes of action herein occurred when Plaintiff was housed at Calipatria State Prison ("Calipatria"). Plaintiff is a follower of Islam, and in accordance with the tenets of his faith, he does not eat pork. He alleges that in May 2002, he began to suspect that the prison was serving foods containing pork without labeling them with a "P" on the menu as required by prison regulations. He was referred to a prison psychologist, who diagnosed him with depression. He was transferred to a mental health facility, and was placed on suicide watch, but was eventually transferred back to Calipatria.

In October 2003, the Calipatria prison cafeteria began serving "turkey ham" for breakfast. It was not labeled with a "P" on the menu, but Plaintiff was nonetheless suspicious that it contained pork. Plaintiff alleges that his own investigation revealed that the turkey ham did in fact contain pork, despite the affirmative verbal assurances to the contrary by Defendant Vorise.

Plaintiff filed an administrative appeal complaining that his First Amendment right to the free exercise of religion had been infringed by the prison's failure to alert him to the presence of pork in the cafeteria food. Plaintiff filed two additional appeals complaining that the prison refused to let him be seen by medical staff

for the mental health problems he was experiencing as a result.

In December 2004, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this suit alleging claims under 42 U.S.C. § 1983 and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C § 2000bb–2000bb–4. He names as Defendants the Director of the CDC, Jeanne Woodford; the Calipatria warden, Stuart Ryan; the Calipatria food service manager, John Mitchell; two Calipatria cooks, Hector Lopez and M. Vorise; and Sysco's Regional Sales Manager, Stan Jones. Plaintiff claims that he was led to consume pork by the actions and omissions of these Defendants, in violation of his First Amendment rights to free exercise of religion. Plaintiff also contends that Defendant M. Levin, the chief medical officer of Calipatria, violated his Eighth Amendment rights by ignoring his repeated requests for mental health treatment.

### III.

### *DISCUSSION*

On April 7, 2005, Defendant Stan Jones filed a motion to dismiss, arguing that he is not a state actor and therefore cannot be sued for the alleged First Amendment violations. On May 16, 2005, State Defendants Levin, Lopez, Mitchell, Ryan, Vorise and Woodford also filed a motion to dismiss on various legal grounds. Plaintiff opposes both motions.

### A. RFRA Claims

■ As an initial matter, the Court adopts the Magistrate Judge's recommendation and dismisses Plaintiff's RFRA claims in light of the Supreme Court's ruling in *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). *See Guam v. Guerrero*, 290 F.3d 1210, 1219 (9th Cir.2002) (recognizing in

light of *Boerne* that state and local government actors cannot be sued for violations of RFRA). Although none of the Defendants moved for dismissal of this claim, the Court dismisses this claim *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2). *See also Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (dismissal under 28 U.S.C. § 1915 proper when claim is based on "indisputably meritless legal theory"). Because amendment of Plaintiff's RFRA claim would be futile in light of *Boerne*, the Court dismisses the claim with prejudice.

### B. State Defendants' Motion

State Defendants move to dismiss based on several legal theories. Defendants claim that Plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). Defendants also move to dismiss the First Amendment claims against them on grounds that negligence cannot be the basis of an alleged Constitutional violation. Defendants Ryan and Woodford move to dismiss on grounds that they were not alleged to have been personally involved in the violation of Plaintiff's Constitutional rights. Defendant Levin also moves to dismiss the Eighth Amendment claim against him because his actions do not amount to "deliberate indifference" to Plaintiff's serious medical needs.

#### 1. *Exhaustion*

State Defendants assert the Plaintiff failed in several respects to properly exhaust his administrative remedies, and that Plaintiff's entire complaint should be dismissed without prejudice because it contains unexhausted claims.

■ Ordinarily, a plaintiff bringing § 1983 claims is not required to exhaust administrative remedies as a prerequisite to filing suit. *See Patsy v. Bd. of Regents*,

457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, the PLRA imposes an exhaustion requirement on prisoners bringing such claims. *See* 42 U.S.C. § 1997e(a). Defendants maintain that strict adherence to this exhaustion requirement mandates an inmate plaintiff exhaust *all* the claims he seeks to litigate before commencing the action. According to Defendants, the Court must dismiss a "mixed" complaint in its entirety.

■ Although the Ninth Circuit has not addressed the issue, this Court has held that the PLRA requires total exhaustion before filing suit. Therefore, this Court has held that a "mixed" complaint containing both exhausted and unexhausted claims must be dismissed in its entirety without prejudice. *Mubarak v. Calif. Dep't of Corr.*, 315 F.Supp.2d 1057–1060 (S.D.Cal.2004). In so holding, this Court joined the Eighth and Tenth Circuits in requiring total exhaustion. *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1189–90 (10th Cir.2004) (presence of unexhausted claims in the complaint required district court to dismiss action in entirety without prejudice); *Graves v. Norris*, 218 F.3d 884 (8th Cir.2000) (plain language of PLRA requires all available prison grievance remedies be exhausted as to all of the claims). Accordingly, if the State Defendants are correct that Plaintiff's complaint is "mixed," the entire complaint should be dismissed without prejudice.

The administrative appeals process for California inmates is set forth in Title 15 of the California Code of Regulations, which provides, "Any inmate...may appeal any departmental decision, action, condition, or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs., tit. 15 § 3084.1(a). The process consists of four steps. The first is to attempt to informally resolve his or her problem with the staff member involved.

*Id.* at § 3084.5(a). If unsuccessful, the inmate may submit an appeal on the CDC 602 inmate appeal form. *Id.* at § 3084.5(b). If denied at that level, the inmate may appeal to the second formal review conducted by the head of the institution or his/her designee. *Id.* at § 3084.5(c). The third and final level of formal review is conducted by the Director of the CDC or his/her designee. *Id.* at § 3084.5(e)(2); *see also Nichols v. Logan*, 355 F.Supp.2d 1155, 1161 (S.D.Cal.2004).

■ Defendants argue that with respect to Plaintiff's First Amendment claim, Plaintiff failed to name any Defendants in his administrative grievance other than Mitchell and Vorise, therefore he failed to exhaust his claim as to the other Defendants. Since the claim is therefore "mixed," Defendants argue that it should be dismissed in its entirety. State Defendants also argue that Plaintiff failed to exhaust his Eighth Amendment claim against Defendant Levin by failing to name him in his grievances about the prison's alleged failure to provide mental health treatment.

While Plaintiff did not list all of the State Defendants by name, the Magistrate Judge nonetheless concluded in her R & R that a plaintiff need not identify or name each defendant in an administrative grievance form to properly exhaust his claim. *See Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir.2005). The form used in *Butler* to initiate a grievance under the Americans with Disabilities Act ("ADA") (CDC Form 1824) did not require identification of any specific person. *Id.* The form used to initiate a CDC grievance (CDC Form 602), as in this case, also does not require an inmate to name or identify specific persons. *See* Cal.Code Regs., tit. 15 § 3084.2(a)(1). Thus, the Magistrate Judge concluded the holding in *Butler* is applicable to the facts in this case.

Defendants argue that the R & R improperly extended the *Butler* ruling for claims under the ADA to general CDC claims. Specifically, Defendants note that the CDC grievance process, unlike the ADA process, requires an informal attempt to resolve the grievance with the involved staff. A provision requiring an attempt to resolve a grievance with involved staff does not negate the reasoning in *Butler*, however. A prisoner submitting a grievance is merely required to follow the administrative procedures available to him. *See Butler*, 397 F.3d at 1183; *see also* Cal.Code Regs., tit. 15 § 3084.2(a)(1) (requiring California prisoner to use the Form 602 "to describe the problem and the action requested"). There are also provisions for waiving the informal attempt requirement when impractical, not applicable, or in emergency situations. *See* Cal.Code Regs., tit. 15, § 3084.5(a)(3) and 3084.7. The state of California, therefore, does not require an informal attempt to resolve a grievance with the involved staff in every circumstance. Thus, Defendants' distinction between the ADA and CDC processes does not render *Butler* inapplicable to the facts of this case.

Defendants also argue that there are separate processes for an ADA grievance and for a CDC grievance, therefore *Butler* should not apply. However, the procedures for a CDC grievance and an ADA grievance are not entirely separate. For instance, a prisoner dissatisfied with his initial ADA grievance must attach the CDC 1824 form to a CDC Form 602 in the same manner as any other prisoner filing his first formal grievance. Thereafter, the appeal process for ADA claims and other claims is the same. *See* Cal.Code Regs., tit. 15, § 3085(b)-(c).

■ State Defendants argue further that the PLRA was enacted to reduce the quantity and improve the quality of prison-er suits. *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). However, the PLRA does not dictate or require that a plaintiff identify specific parties; it only requires that the administrative remedies be exhausted. *See* 42 U.S.C. § 1997e(a). The Magistrate Judge concluded that State Defendants did not meet their burden to show that Plaintiff failed to exhaust his administrative remedies prior to filing suit. This Court agrees, and therefore denies the State Defendants' motion to dismiss on this basis.

### 2. *First Amendment Claim Predicated by a Negligent Act*

■■ Defendants also move to dismiss Plaintiff's First Amendment claim based on a theory that it cannot be predicated on a defendant's negligence. The Supreme Court has made clear that a § 1983 claim contains no independent state of mind requirement; the inquiry is based on whether the plaintiff can establish a violation of the underlying constitutional right. *See Daniels v. Williams,* 474 U.S. 327, 329–30, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Here, Plaintiff alleges a violation of his First Amendment right to the free exercise of religion. His claims must therefore be analyzed under the First Amendment. *See Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.") (internal quotations omitted). To state a claim under the First Amendment, Plaintiff must show the State Defendants "burdened the practice of religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legiti-

mate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir.1997). The question before this Court is whether the State Defendants may negligently "burden the practice" of Plaintiff's religion.

Defendants argue that negligence may not be the basis of a First Amendment claim, but the legal authority cited to support this argument does not discuss First Amendment Free Exercise claims. Defendants cite *Daniels*, 474 U.S. 327, 106 S.Ct. 662, which holds the Due Process clause cannot be violated by a negligent act. *Id.* at 328, 106 S.Ct. 662. Defendants also cite to *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), both of which require more than negligence to advance a violation of the Eighth Amendment. Defendants further cite *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), which requires a showing of intentional conduct to support a claim for a Fourth Amendment violation. While these cases are somewhat related in that they involve alleged constitutional violations brought under § 1983, none of the cases holds that a Free Exercise claim cannot be based on negligence.

Defendants also discuss a Seventh Circuit case, *Kincaid v. Vail*, 969 F.2d 594 (7th Cir.1992), as closely analogous to this case. That case involved a claim by inmates against state court clerks for violation of the inmates' constitutional right of access to the courts. The Seventh Circuit held that a "mere isolated incident of negligence" did not rise to the level of a constitutional violation. *Id.* at 602. *Kincaid*, however, involved the constitutional right of access to the courts, and not, as here, a claim based in the right to free exercise of religion. *See id.* at 602 n. 10. (citing *Crawford–El v. Britton*, 951 F.2d 1314, 1318 (D.C.Cir.1991)) (*intentional* in-

terference with access to court violates constitution); *Bailey v. Andrews*, 811 F.2d 366, 371 (7th Cir.1987)("in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim").

The Fourth Circuit has similarly held that a prisoner's claim of negligent denial of access to the courts does not give rise to a § 1983 cause of action. *Pink v. Lester*, 52 F.3d 73 (4th Cir.1995). Plaintiff prisoner in *Pink* attempted to distinguish *Daniels*, which disallows negligence as the basis of a Due Process claim, by attempting to ground the right of access to the courts in the First Amendment, specifically, the prohibition against abridging the "right to petition the government for redress of grievances." *Id.* at 76. The court, however, did not agree with the argument. "[I]t matters not . . . whether the right of access is catalogued under the First or Fourteenth Amendment . . . . However [Plaintiff's] claim is labeled, the rationale of *Daniels* controls." *Id.* Further, the court explained, "[j]ust as a 'deprivation' suggests an intentional denial, . . . an 'abridgement' connotes a conscious act." *Id.*

While *Daniels* only went so far as to deny negligence as a basis for a Due Process claim under § 1983, 474 U.S. at 330–31, 106 S.Ct. 662, the rationale is relevant to the alleged constitutional violations at issue in this case. The Supreme Court relied on the word "deprive" in the Fourteenth Amendment as connoting something more than a negligent act. *Id.* at 330, 106 S.Ct. 662. "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Id.* at 331, 106 S.Ct. 662 (emphasis added). Additionally, the Supreme

Court cautioned against opening the federal courts to lawsuits where there is no *affirmative* abuse of power. *Id.* at 330, 106 S.Ct. 662. The operative language in the First Amendment, "abridge," similarly connotes a conscious act, rather than one of negligence. *Pink,* 52 F.3d at 76. "Notably, the words deprive and abridge originally shared the same meaning, ... and thus should both be read to imply the same degree of intent." *Id.* at 76–77.

The only court to squarely address the issue in this case is the United States District Court for the Eastern District of Virginia. *See Shaheed v. Winston,* 885 F.Supp. 861 (E.D.Va.1995), *aff'd,* 161 F.3d 3 (4th Cir.1998). In *Shaheed,* the district court held that negligence did not give rise to a Free Exercise § 1983 claim. 885 F.Supp. at 868. In that case, defendant prison officials were alleged to have violated plaintiff's constitutional right to the free exercise of religion by failing to accommodate the observance of a religious holiday. *Id.* The court, relying in part on the rationale of *Pink,* held that "prohibiting" within the Free Exercise clause, "suggests a conscious act," rather than mere negligence. *Id.* ("Since the failure to accommodate [plaintiffs' free exercise of religion] resulted from a misunderstanding ..., the defendants actions were negligent, not intentional, and the plaintiffs may not rely on § 1983 as a basis for this claim.") The court further reasoned that "expansion of § 1983 to instances of mere negligence foreshadows further interference with the operations of state penal institutions. The significant costs that would be imposed by such suits, without the benefit of remedying federal wrongs, are unjustifiable." *Id.* (quoting *Pink,* 52 F.3d at 77).

This Court is persuaded by the case law discussed above, especially the decision in *Shaheed.* The reasoning of these cases leads this Court to conclude that Plaintiff must assert more than negligence to state a valid § 1983 claim for the violation of his Free Exercise rights. Instead, Plaintiff must allege conscious or intentional acts that burden his free exercise of religion.

■ Plaintiff alleges generally that Defendants "consciously chose to obstruct and prohibit the plaintiff's right to free exercise of his religion by deceptively serving pork and disguising it as turkey." (Compl. at 7). Plaintiff more specifically alleges Defendant Vorise misled him to consume pork by stating to Plaintiff that he checked the food himself and that it did not contain pork. Plaintiff alleges that he asked Defendant Vorise three times to determine if the turkey ham in question contained pork. Defendant Vorise is alleged to have told Plaintiff that he checked the product and that it did not contain pork. (*Id.* at 7–8). Plaintiff also contends that Defendant Mitchell read the product labels and consciously chose to serve the pork, disguising it as turkey. (*Id.* at 10). These allegations sufficiently allege conscious or intentional conduct and thus, state a First Amendment claim against Defendants Vorise and Mitchell.

■ Plaintiff's allegations against Defendant Lopez, however, are insufficient. Unlike the allegations against Defendants Vorise and Mitchell, there are no specific allegations of a conscious act on the part of Defendant Lopez to burden Plaintiff's free exercise of religion. Accordingly, the Court grants the motion to dismiss Plaintiff's First Amendment claim against Defendant Lopez. Plaintiff is given leave to amend his complaint to allege specific facts that assert conscious or intentional acts by Defendant Lopez that burdened his free exercise of religion.

### 3. *Respondeat Superior*

■ State Defendants argue that the claims .against Defendants Ryan and

Woodford should be dismissed because Plaintiff has failed to allege that either of these Defendants was personally involved in the violation of his constitutional rights. In his complaint, Plaintiff alleges essentially that Defendants Ryan and Woodford are liable under § 1983 because of the acts and omissions of their subordinates, Defendants Mitchell, Vorise, and Lopez. He does not allege any facts showing personal involvement in the alleged violation of his rights by either of these Defendants.

 A person deprives another "of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978). There is no *respondeat superior* liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437–38 (9th Cir.1993). Thus, to avoid the *respondeat superior* bar, the plaintiff must allege personal acts by the defendants which have a direct causal connection to the constitutional violation at issue. *See Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986); *Paine v. City of Lompoc*, 265 F.3d 975, 984 (9th Cir.2001) (whether or not each defendant "is a participant in the incidents that could give rise to liability" is a necessary element of the § 1983 claim). Section 1983 provides for relief only against those who, through their personal involvement as evidenced by affirmative acts, participation in another's affirmative acts, or failure to perform legally required duties, cause the deprivation of the plaintiff's constitutionally protected rights. *Johnson*, 588 F.2d at 743.

 Because Plaintiff cannot recover against Defendants Ryan and Woodford based on a *respondeat superior* theory, the Court dismisses the claim against these Defendants. The Court recognizes, however, that "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to *pro se* plaintiffs." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir.2004). Because Plaintiff could possibly cure the deficiencies in his complaint by pleading additional facts showing that Defendants Ryan and Woodford had some personal involvement in the alleged violation of his rights, the Court grants Plaintiff leave to amend his claims against these Defendants.

### 4. *Eighth Amendment Claim against Defendant Levin*

 Plaintiff alleges Defendant Levin's failure to provide requested medical services violated his Eighth Amendment right to be free from cruel and unusual punishment. To establish a violation of the Eighth Amendment based on failure to provide medical treatment, the prisoner must show that prison officials engaged in acts or omissions amounting to "deliberate indifference" to a serious medical need. *Estelle*, 429 U.S. at 106, 97 S.Ct. 285. Under the deliberate indifference standard, liability may be imposed only if the prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

 While Plaintiff alleges a serious medical need, he must also show that Defendant Levin was deliberately indifferent to his need for medical treatment for that need. To do so he must establish substantial indifference to his medical needs; a prison official's inadvertent fail-

ure to treat, malpractice, or even gross negligence are all insufficient to establish an Eighth Amendment violation. *Estelle,* 429 U.S. at 106, 97 S.Ct. 285; *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997). In other words, a prison official is not liable for failure to alleviate a risk of harm that he should have perceived but did not. *Farmer,* 511 U.S. at 838, 114 S.Ct. 1970.

▮▮▮▮ Here, Plaintiff has not alleged any facts indicating that Defendant Levin had actual knowledge of his mental distress and consciously disregarded his need for treatment. It is not clear from the record that Defendant Levin had any knowledge of Plaintiff's requests during the time that he made requests to be seen and was actually seen. Plaintiff has failed to allege deliberate indifference on the part of Defendant Levin. Accordingly, the Court adopts the Magistrate Judge's recommendation and dismisses the claims against Defendant Levin. Because Plaintiff could possibly cure these defects by pleading additional facts showing that Defendant Levin knew of and consciously disregarded his need for medical treatment, the Court grants Plaintiff leave to amend his Eighth Amendment claim.

## C. Motion by Stan Jones

▮▮▮▮ Defendant Jones seeks dismissal under Fed.R.Civ.P. 12(b)(6) arguing that he is not a state actor and thus cannot be sued under 42 U.S.C. § 1983. To state a claim under § 1983, the "plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Individuals and private

entities are not normally liable for violations of most rights secured by the United States Constitution. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In order to maintain a cause of action based on an allegation of constitutional violations, a plaintiff must show that the actions complained of are "fairly attributable" to the government. *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *see also Vincent v. Trend Western Technical Corp.,* 828 F.2d 563, 567 (9th Cir.1987).

▮▮▮▮ "Action taken by private individuals may be 'under color of state law' where there is 'significant' state involvement in the action." *Howerton v. Gabica,* 708 F.2d 380, 382 (9th Cir.1983). Although § 1983's under-color-of-state-law requirement is technically separate from the Fourteenth Amendment's state-action requirement, the two inquiries are closely related. *Collins v. Womancare,* 878 F.2d 1145, 1148 (9th Cir.1989). The Supreme Court has articulated four distinct tests for determining when the actions of a private individual amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Id.* at 1148–49; *see also George v. Pacific–CSC Work Furlough,* 91 F.3d 1227, 1231 (9th Cir.1996).

The Supreme Court has concluded, in the prison context, that private individuals who contract with the state to provide services to inmates can, in some circumstances, be considered state actors. For example, a physician under contract to provide medical services to inmates was a state actor for purposes of § 1983. *West,* 487 U.S. at 55–56, 108 S.Ct. 2250. The court found determinative the fact that the state had a duty to provide adequate medi-

cal care to prisoners-a duty it had delegated to a private contractor. *Id.*

Just as the state has a responsibility to provide medical care to its inmates, so must it provide adequate food to them, as well. *Farmer,* 511 U.S. at 832, 114 S.Ct. 1970. Thus, a private company to whom the state has delegated its obligation to provide food services to inmates would likely be considered a state actor for the purposes of § 1983. *See McCullum v. City of Philadelphia,* No. 98–5858, 1999 WL 493696 (E.D.Pa. July 13, 1999) (unpublished) (private contractor operating prison cafeteria considered a state actor). Here, however, the Calipatria State Prison has not delegated its duty to provide food to inmates. It has simply contracted with Defendant Jones to provide food to the prison, which the prison employees use to prepare meals for inmates. As such, Jones is less like the doctor in *West,* and more like a vendor who supplies band-aids or other medical supplies to be *used* by the doctor, a relationship with the state that is far more tenuous. That Jones' company does business with the state is also not sufficient to implicate him as a state actor. *See Rendell–Baker,* 457 U.S. at 843, 102 S.Ct. 2764 (private contractors do not become state actors "by reason of their significant or even total engagement in performing public contracts"); *see also Vincent,* 828 F.2d at 567–68 ("standard government contractor" is not a state actor).

In his objections, Plaintiff asserts generally that he has raised a proper claim against Defendant Jones. However, he fails to point to any allegations in the complaint that would overcome these deficiencies. The Court therefore adopts the Magistrate Judge's recommendation, and dismisses Defendant Jones from this case.

## IV.

### *CONCLUSION AND ORDER*

For the reasons discussed above, the Court hereby orders as follows:

1. Defendant Jones' motion to dismiss is **GRANTED** with prejudice;

2. The State Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. Specifically, the Court denies Defendants' motion to dismiss Plaintiff's First Amendment claim against Defendants Vorise and Mitchell. The Court grants Defendants' motion to dismiss Plaintiff's First Amendment claim against Defendants Lopez, Ryan, and Woodford, but grants Plaintiff leave to amend the claims against those Defendants. The Court also grants the motion to dismiss Plaintiff's Eighth Amendment claim against Defendant Levin, but grants Plaintiff leave to amend that claim. Finally, the Court *sua sponte* dismisses Plaintiff's RFRA claims with prejudice.

Plaintiff is granted leave to file a First Amended Complaint within thirty (30) days from the date this Order is stamped "Filed" that addresses the deficiencies of pleading set forth in this Order. Plaintiff is cautioned that his First Amended Complaint must be clearly captioned as such, and that it will supersede his previous pleading. *Hal Roach Studios, Inc. v. Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir.1989). Thus, Defendants not named or served and all claims not re-alleged in the First Amended Complaint will be deemed to have been waived. *See King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir.1987). Should Plaintiff's First Amended Complaint fail to comply with these general rules of pleading, he is cautioned that this action may be dismissed with prejudice and that such a dismissal may hereafter constitute a "prior occasion" or "strike" under 28 U.S.C.

§ 1915(g).[1]

IT IS SO ORDERED.

---

1. "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action [under the *in forma pauperis* provisions of 28 U.S.C. § 1915], if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the pris-oner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). *See McHenry v. Renne*, 84 F.3d 1172, 1177–79 (9th Cir.1996) (failure to comply with court order regarding amendment may form the basis of Fed.R.Civ.P. 41(b) dismissal); *Rodriguez v. Cook*, 169 F.3d 1176, 1179–82 (9th Cir.1999) (upholding constitutionality of 28 U.S.C. § 1915(g)).